**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1688. R. C. ACRES, INC. v. CAMBRIDGE FAIRE PROPERTIES, LLC et al.

A14A1689. MOMMIES PROPERTIES, LLC v. R. C. ACRES, INC.

A14A2102. BOSE v. R. C. ACRES, INC.

BOGGS, Judge.

These appeals arise from litigation involving the location and extent of an easement of access to real property, and alleged damages as a result of interference with the easement. In 2009, R. C. Acres, Inc. ("R. C.") filed a complaint seeking to quiet title to an alleged easement of access to its land and for damages against Cambridge Faire Properties, LLC and Mommies Properties, LLC as owners of adjoining parcels. After numerous amendments and motions to join parties and to intervene, the case proceeded to trial in 2013 as to appellees Mommies Properties, LLC, Vinay Bose, and Patricia Whitney d/b/a Flowered Rock Farm ("the M. P.

defendants") and Cambridge Faire LLC, Dewey White, and White Repair & Contracting Co. ("the Cambridge defendants"), as well as other entities not parties to this appeal.[1]

In a bifurcated trial, the jury returned two detailed special verdicts. The first verdict marked the easement's original and ultimate locations, and the second awarded damages to R. C. against the Cambridge defendants for interference with its easement, but found in favor of the M. P. defendants.[2] Judgment was entered on the jury's verdicts, and the parties filed various post-trial motions. But before any rulings were made by the trial court, R. C. filed its notice of appeal. Mommies Properties and Bose also filed conditional cross-appeals of the trial court's order denying their motions for sanctions for the alleged spoliation of evidence.[3]

---

[1]The trial court entered default judgment against two defendants, 20 West Land Co. LLC and Silver Creek Development, and they are not parties to this appeal. It also directed a verdict against the Cambridge defendants as to liability for interference with the easement. R. C. reached a post-trial settlement with the Cambridge defendants, and they likewise are not parties to this appeal.

[2]The jury also declined to award punitive damages against any defendant, and found in favor of the M. P. defendants on the issue of trespass to realty, and in favor of R. C. on the defendants' counterclaims, as well as in favor of a third-party defendant who is not a party to this appeal.

[3]Appellees Bose and Whitney, appearing pro se, filed briefs incorporating the brief of Mommies Properties in Case No. A14A1688.

Because the trial court abused its discretion in limiting the jury's consideration of evidence showing earlier locations of the easement at issue, and further erred in ruling that the new Georgia Evidence Code limited cross-examination to the scope of direct, we reverse in part in Case No. A14A1688. We also vacate the judgment in part and remand for the trial court to conform that part of the judgment to the jury's verdict. But because the trial court did not abuse its discretion in denying the motions for sanctions, we affirm in Case Nos. A14A1689 and A14A2102.

*Case No. A14A1688*

1. R. C. contends that in preparing the special verdict form for submission to the jury, the trial court improperly limited the jury's consideration of the easement to its original and its ultimate locations only. As a result, R. C. contends that the jury was unable to consider the award of damages with respect to intermediate locations of the easement with which it alleged that the defendants interfered.

"The form of a verdict and the submission of a special verdict are within the discretion of the trial court, and, absent an abuse of that discretion, the court's choice will not be overturned." (Citations, punctuation, and footnote omitted.) *Certain Underwriters at Lloyd's of London v. Rucker Constr., Inc.*, 285 Ga. App. 844, 851-852 (4) (648 SE2d 170) (2007); see also OCGA § 9-11-49. But the special verdict

3

form must be "adequately crafted to elicit a decision on the issues before the court. [Cit.]" *Glisson v. Glisson*, 265 Ga. 239, 240 (4) (454 SE2d 508) (1995). Because some evidence was presented at trial that the easement was relocated by agreement of the parties to several different routes during the period in question, the trial court abused its discretion in refusing to submit this disputed question of fact to the jury, and we therefore must reverse.

A brief summary of the relevant evidence is necessary for consideration of this issue. At trial, R. C. presented testimony that it owns a parcel of property on the Chattahoochee River in Forsyth County. The parcel is landlocked, and was originally part of a larger tract of land with access to a nearby highway, owned by the Rives Corporation ("Rives") at the time R. C. acquired its parcel from Rives, but later divided into two tracts and conveyed to others. One tract was transferred to the White defendants; the other was developed as an equestrian property by an intermediate owner, Silver Creek Development, and eventually transferred to M. P. defendants Mommies Properties and Bose.[4]

---

[4]Mommies Properties quit-claimed a portion of its property to Bose, its property manager, after this litigation began. Defendant Whitney is the tenant operating the stable on the property.

At the time of the sale to R. C. in 1985, Rives granted "a sixty foot wide easement which runs parallel to the south boundary line" of the property. The deed did not describe the easement location in more detail; instead, it explicitly provided: "a relocated easement of ingress and egress will be obtained between the parties hereto, their respective heirs and assigns subsequent to the date of this conveyance." A Rives officer testified that this agreement was made so that the parties involved could later agree upon a mutually convenient location.

A major issue at trial was whether the easement was relocated by agreement between the parties or their predecessors in title. While the M. P. defendants contend the evidence showed that the easement was never relocated with respect to their property, citing portions of the record, R. C. points to evidence in the record, including surveys, deeds, and testimony, showing that the easement was relocated by agreement to an existing roadway on the property, known as "Woods Road" or "Old Woods Road." Testimony was presented that this route was used from R. C.'s acquisition of the property in 1985 until 2005, by R. C. and others, including a lessee of R. C. which operated a model airplane club on the land, and the Army Corps of Engineers, which used the roadway to access a dam release warning horn on the river. R. C. presented surveys referenced in the various deeds which identified this roadway

5

as its easement. Some evidence was also presented to show that after the equestrian complex was developed in 1998 by Silver Creek, a predecessor in title to the M. P. defendants, a barn blocked a portion of this existing roadway, and a gravel drive was installed around it.

The location of the easement became an issue after Mommies Properties purchased the stable property in 2005 and blocked access to R. C.'s property, informing R. C. by e-mail that it could no longer use the roadway. R. C. presented evidence that after matters reached this impasse, it began negotiations with both the M. P. defendants and the Cambridge defendants to move the easement to a location agreeable to all the parties. Testimony was presented that a location was agreed upon, and that R. C. constructed a roadway at its expense, referred to by the parties as the "New Road." This roadway, however, was also blocked by defendants, and this action followed.

At trial, while preparing the special verdict forms, the parties discussed with the trial court whether they should provide for the jury to find multiple locations of the easement over time. The trial court observed, "this is just a matter whether this easement's been relocated by agreement, where was it originally and has it been relocated by agreement. Whether somebody went around the barn for, you know, two

6

or three years is not . . . it has nothing to do with the question of whether this easement has been relocated by the parties." Counsel for R. C. objected, pointing out that the evidence as presented could support a finding that "between 1995 and 2008, R. C. Acres by agreement with Silver Creek located that easement on Woods Road, either through the barn or later by agreement to go around the barn. And that then there was another relocation to the new road . . . in 2008." After some discussion and further objection by R. C., the trial court ruled, "[A]s a matter of law, I'm finding that . . . this easement didn't move around like a dot moving around, no. If it was relocated once, it was relocated once. And that's it. And I'm finding that as a matter of law."

The trial court, in formulating the special verdict form, in essence removed from the jury's consideration the issue of any intermediate locations of the easement. This was error as a matter of law. Georgia follows the majority rule that "an easement with a fixed location cannot be substantially changed or relocated without the express or implied consent of the owners of both the servient estate and the dominant estate, absent reservations contained in the instrument creating the easement." (Citations and footnote omitted.) *Herren v. Pettengill*, 273 Ga. 122, 123 (2) (538 SE2d 735) (2000). It follows that when that consent is given, the easement may be relocated. Here, the original deed explicitly provided that the easement would be relocated by the parties.

And nothing in Georgia law prohibits the relocation of an easement by agreement more than once. In *Calhoun GA NG, LLC v. Century Bank*, 320 Ga. App. 472, 476 (1) (740 SE2d 210) (2013), we held that the parties' agreement contemplated relocation of an easement "from time to time," dependent upon the future construction or alteration of buildings and walkways on the servient property.

It follows that R. C. and the prior owners of the servient tract could have agreed to relocate the easement to the "Woods Road," and that R. C. and subsequent owners of the servient tract could later agree to relocate the easement once more to the "New Road." Whether and when they did so was a question properly submitted to the jury, and the trial court erred as a matter of law in removing this issue from the jury's consideration.

We note that the trial court was correct in reasoning that the first and last locations of the easement were the only ones relevant to the first half of the bifurcated trial. Its ruling therefore was not error with respect to the first verdict, in which the jury established the final location of the easement as of the time of trial. But the evidence also demonstrated that this was not the only location relevant to the separate question of whether the defendants had interfered with R. C.'s easement, which was the subject of the second half of the bifurcated trial. Evidence that the easement was

8

located along the "Woods Road" for a period of time was directly relevant to the jury's consideration of whether the defendants interfered with R. C.'s easement of access to its property during that time, and removal of that question from consideration was harmful error. This is confirmed by the jury's question to the trial court during deliberations: "Will our answer to number two [on the special verdict form] be the final easement?" The court's answer was, "Yes, it will be." The jury returned the special verdict form with two lines marked "Deeded Easement" and "New-Relocated Road" as of "Fall 2008." It appears from its question and its completion of the special verdict form that the jury understood from the evidence presented that the easement was relocated more than once, but that its decision was limited by the special verdict form to only the initial and final locations of the easement, including on the question of damages.

"Although the jury are the best doctors of doubt that we know, they can be lulled, as here, into rendering an inaccurate diagnostic award when presented with misleading symptoms. It then becomes the duty of an appellate court to intervene with a correct judicial prescription." (Citation and punctuation omitted.) *CSX Transp. v. Levant*, 200 Ga. App. 856, 865 (1) (410 SE2d 299) (1991) (Birdsong, J., dissenting); rev'd, 262 Ga. 313 (417 SE2d 320) (1992) (quoting dissent with approval). We

9

therefore must reverse and remand for a new trial limited to the issue of liability of the remaining defendants with respect to all intermediate locations of the easement for which some evidence has been shown.

2. Because it may occur on retrial, we also consider R. C.'s assertion that the trial court improperly limited its cross-examination of a defense witness. Counsel for R. C. asked this witness some general questions regarding the system of land surveying in Georgia. Counsel for the M. P. defendants objected that the witness was not qualified as an expert, and the following exchange occurred:

> The Court: Well, cross has exceeded – certainly exceeded the scope of direct. What do you say to that, [counsel]?
> Counsel for R. C.: Well, Your Honor, I don't know of a rule that restricts me to the scope of direct. But I'm not asking him for opinions, I'm asking him for facts about surveying at this point.
> Counsel for Cambridge: Your Honor, for the record, the White defendants will object to this line of questioning. It clearly exceeds the very last –
> The Court: I think we're now under the new rules of evidence. . . . [It] used to be correct that it wasn't restricted. I believe under the new rules of evidence, you're now restricted to the scope of direct. I don't think you can go beyond the scope of direct.
> Counsel for R. C.: Then I have no further questions.

This was error. Federal Rule of Evidence 611 (b) indeed limits cross-examination to the scope of direct: "Scope of Cross-Examination. Cross-examination

10

should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility. The court may allow inquiry into additional matters as if on direct examination." But this is one of several instances of the Georgia Evidence Code's divergence from the federal rules. The Code section in question, OCGA § 24-6-611 (b)[5], does not track the federal rule but instead provides:

> A witness may be cross-examined on any matter relevant to any issue in the proceeding. The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against the party. If several parties to the same proceeding have distinct interests, each party may exercise the right to cross-examination.

"Where a provision of the new Evidence Code *differs* in substance from the counterpart federal rule, as interpreted by federal courts, we must correspondingly presume that the General Assembly meant the Georgia provision to be different." (Footnote omitted, emphasis in original.) *Parker v. State*, ___ Ga. ___ (3) (a) (Case No. S14G1005, decided Feb. 16, 2015).

The long-standing Georgia rule is that

---

[5]Because this case was tried in 2013, Georgia's new Evidence Code applies. Ga. L. 2011, p. 99, §101.

[t]he right of cross examination is a substantial right, the preservation of which is essential to the proper administration of justice and extends to all matters within the knowledge of the witness, the disclosure of which is material to the controversy. This right should not be abridged. It is the duty of the court both to protect a witness under cross-examination from being unfairly dealt with, and to allow a searching and skillful test of his intelligence, memory, accuracy and veracity. As a general rule, it is better that cross-examination should be too free than too much restricted. The right of cross-examination in this state includes questioning a witness about subjects relevant to any of the issues in the case, not simply those matters elicited on direct examination.

(Citations and punctuation omitted.) *James v. State*, 260 Ga. App. 536, 536-537 (1) (580 SE2d 334) (2003). See also *Stone v. State*, 250 Ga. 718, 720 (300 SE2d 500) (1983) ("The trial court erred in ruling that defendant could not seek this information on cross-examination simply because it had not been brought out during direct.")

3. Finally, R. C. complains that the judgment entered below with respect to the location of the easement does not sufficiently identify or describe the easement, preventing it from obtaining marketable title.[6] In the first part of the bifurcated trial, the jury was asked to locate both the original and the final location of the easement

---

[6]We note that the trial court did not have the opportunity to rule on R. C.'s pending Motion to Amend Judgment before the notice of appeal was filed.

12

on a plat provided as part of the special verdict form. During the preparation of the form, R. C. proposed that the jurors be given clear choices based upon a survey as to the location of the easement, rather than drawing a line, because "they obviously won't be able to make a survey with a colored marker, and we will be left to guess where on the ground that the jury indicated to locate the easement." The M. P. defendants responded that "[t]he Court has authority to interpret the verdict in connection with future proceedings," and asserted that it was within the trial court's power to discern the jury's intent based upon the surveys admitted into evidence. The trial court concluded that it would take the jury's mark and "interpret that location" to scale.

The jurors drew two lines on the plat with a marker, labeling one "Deeded Easement" and the other "New-Relocated Road," but the trial court in its judgment did not reduce to scale the location of the line indicating the "New-Relocated Road." Nor was it made clear in the judgment whether the easement would follow the exact metes and bounds of the "New-Relocated Road" as built, or the line as drawn by the jury on the survey. The trial court had previously determined that the width of the easement was 60 feet, but that also was not incorporated in the judgment on the jury verdict.

Judgment and execution shall conform to the verdict, and a judgment may be amended by order of the court to conform to the verdict upon which it is predicated, even after an execution issues. The judgment must conform to the reasonable intendment of the verdict upon which it is based, as determined by an inspection of the record, including the verdict and pleadings. Consequently, the trial court was required to examine the record and determine if [the jury's intent] plainly appeared upon the face of the record.

*Kaufman Dev. Partners v. Eichenblatt*, 324 Ga. App. 71, 75-76 (3) (749 SE2d 374) (2013).

A description of property "is sufficiently certain when it shows the intention of the grantor, as to what property is conveyed, and makes its identification practicable. When this appears, the exact location and boundaries of the land may be shown by extrinsic evidence." (Citation and punctuation omitted.) *Norton Realty & Loan Co. v. Bd. of Ed. of Hall County*, 129 Ga. App. 668, 674-675 (4) (200 SE2d 461) (1973). In *Norton*, we held that the necessary information was provided in a judgment incorporating a specific plat in evidence, and that the width of the easement could be supplied from other pleadings in the case. Id. Here, in contrast, while the evidence exists in the record and the trial court indicated its intention to incorporate it in the judgment, it did not do so. In such circumstances, we may vacate the

14

erroneous part of the judgment and direct that the trial court conform it to the jury's verdict. *Pinkerton & Laws v. Macro Constr.*, 226 Ga. App. 169, 172 (4) (b) (485 SE2d 797) (1997).

We therefore vacate the portion of the trial court's judgment regarding the ultimate location of the easement, and remand with the direction that the trial court amend the judgment to conform to the jury's verdict and the evidence, to make the description of the easement sufficiently certain.

*Case Nos. A14A1689 and A14A2102*

In these appeals, conditioned upon reversal in the main appeal, Mommies Properties LLC and Bose complain of the trial court's denial of their motions for sanctions due to alleged spoliation of evidence by R. C. At issue is a poster or enlargement, described by cross-appellants as an "oversized exhibit board," that was used during a hearing on a temporary restraining order in 2009. Former counsel for R. C. displayed the board for the court, stating, "This is a plat of the property, and that's the Old Woods Road (indicating) on the second page. It's a blow up of the same property showing the Old Woods Road that crosses the property of Mommie's and Cambridge." But he did not identify it as an exhibit or offer it in evidence. During cross-examination, former counsel for Mommies marked the board as "Plaintiff's

Exhibit No. 1," but also did not offer it in evidence. The court reporter's transcript shows that "Exhibit No. 1" for the Petitioner was "Not Admitted." The trial court stated in its written order that it reviewed this board in considering the application for a TRO, and that it appeared to be a plat prepared by Rochester and Associates, a surveyor.[7] At some time before trial in 2013, however, the board disappeared.[8]

In September of 2013, Mommies Properties and Bose moved for sanctions, seeking the ultimate sanction of dismissal and arguing that the absence of this board prejudiced their case. By affidavit filed with his motion, Bose, who was a witness at the 2009 hearing though not yet a party, identified certain inscriptions or markings that he claimed to have observed on the missing board. Based on this testimony, Mommies Properties and Bose contended that the board contained information "that the other indisputable facts show were false," that this information contradicted deposition testimony, and that they were deprived of the opportunity to cross-examine witnesses regarding inconsistencies between the board and other surveys.

---

[7]An officer of Rochester & Associates testified by affidavit that every plat, map and survey in its possession had been produced.

[8]At the time of the hearing on the TRO, R. C. was represented by a different law firm.

16

At the hearing on the motions, the trial court noted that the TRO was sought under a completely different theory, that of prescriptive easement, and that the court had ruled that theory out on summary judgment because the alleged easement did not satisfy the requirements for prescription. It further observed that the missing exhibit was obviously favorable to R. C. because R. C. presented it, and to the extent that Mommies Properties and Bose sought to impeach R. C.'s witness with inconsistent allegations, the verified complaint executed by that witness was the proper method for doing so. In its written order, the trial court observed that the argument raised by Mommies Properties and Bose is the exact opposite of that ordinarily raised in a spoliation argument, because they contended they were harmed by the disappearance of a document that they acknowledged *helped* R. C.'s case. The trial court concluded that the missing exhibit supported R. C.'s contentions and "would also be very helpful to Plaintiff at trial in explaining its shifting theories in light of the questions which will surely be posed by the Defendants." The court also found that for purposes of showing contradictory or shifting theories of recovery the missing exhibit was "surplusage," and "remotely, at best, favorable to the Defendants and not, as they claim, the linchpin of their case."

"Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation. Such conduct creates the presumption that the evidence would have been harmful to the spoliator." (Citation and punctuation omitted.) *Clayton County v. Austin-Powell*, 321 Ga. App. 12, 16 (2) (740 SE2d 831) (2013). "The trial court has wide discretion in resolving spoliation issues, and we will not disturb its ruling absent abuse." (Citations and punctuation omitted.) *Allen v. Zion Baptist Church*, 328 Ga. App. 208, 217 (3) (761 SE2d 605) (2014).

Assuming without deciding that a visual aid or demonstrative exhibit prepared by counsel, see OCGA § 9-10-183, constitutes "evidence" that could be deemed subject to spoliation, we cannot say that the trial court abused its discretion in denying cross-appellants' motion. In *Allen*, supra, we observed that the trial court did not abuse its discretion in determining that destroyed records were cumulative of testimony to the same effect, nor in determining that the movants "had established no significant connection between the allegedly spoliated evidence and the success or failure of their . . . claims." 328 Ga. App. at 217 (3). The trial court viewed the exhibit in question at the TRO hearing, and concluded that it was either cumulative or

primarily favorable to R. C., and thus its disappearance was not sufficiently harmful to warrant sanctions. We cannot say that it abused its discretion in so deciding.

*Judgment reversed in part and vacated and remanded in part in Case No. A14A1688. Judgment affirmed in Case No. A14A1689 and Case No. A14A2102. Barnes, P. J., and Branch, J., concur.*