**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 7, 2016**

# In the Court of Appeals of Georgia

A16A0885. R. C. ACRES, INC. v. MOMMIES PROPERTIES, LLC. et al.

BARNES, Presiding Judge.

This is the second appearance of this case involving a dispute as to the location of Appellant R. C. Acres, Inc.'s easement of ingress and egress over real property owned by Appellees Mommies Properties, LLC and Vinay Bose (collectively, the "M. P. defendants").[1] At issue in the present appeal is whether the trial court amended the judgment to specify the ultimate location of the easement in a manner that conformed to the jury's verdict and the evidence presented at trial, as this Court in the prior appeal instructed the trial court to do on remand. See *R.C. Acres, Inc. v. Cambridge Faire Properties, LLC*, 331 Ga. App. 762, 769-770 (3) (771 SE2d 444) (2015) ("*R. C. Acres I*"). Because the trial court amended the judgment on remand in a manner

---

[1]Appellee F. H. Partners, LLC is a lender with a security interest in the property owned by Mommies Properties that intervened in the lawsuit following the remand after the first appeal.

that did not conform to the reasonable intendment of the jury's verdict and the trial evidence, we must reverse the amended judgment and remand for further action consistent with this opinion.

We summarized the relevant trial evidence in *R. C. Acres I*:

> At trial, R. C. presented testimony that it owns a parcel of property on the Chattahoochee River in Forsyth County. The parcel is landlocked, and was originally part of a larger tract of land with access to a nearby highway, owned by the Rives Corporation ("Rives") at the time R. C. acquired its parcel from Rives, but later divided into two tracts and conveyed to others. One tract was [ultimately] transferred to [Cambridge Faire Properties LLC, and White Repair & Contracting Co. (collectively, the "Cambridge defendants")]; the other was developed as an equestrian property by an intermediate owner, Silver Creek Development, and eventually transferred to M.P. defendants Mommies Properties and Bose.

> At the time of the sale to R. C. in 1985, Rives granted "a sixty foot wide easement which runs parallel to the south boundary line" of the property. The deed did not describe the easement location in more detail; instead, it explicitly provided: "a relocated easement of ingress and egress will be obtained between the parties hereto, their respective heirs and assigns subsequent to the date of this conveyance." A Rives officer testified that this agreement was made so that the parties involved could later agree upon a mutually convenient location.

2

A major issue at trial was whether the easement was relocated by agreement between the parties or their predecessors in title. While the M.P. defendants contend the evidence showed that the easement was never relocated with respect to their property, citing portions of the record, R. C. points to evidence in the record, including surveys, deeds, and testimony, showing that the easement was relocated by agreement to an existing roadway on the property, known as "Woods Road" or "Old Woods Road." Testimony was presented that this route was used from R. C.'s acquisition of the property in 1985 until 2005, by R. C. and others, including a lessee of R. C. which operated a model airplane club on the land, and the Army Corps of Engineers, which used the roadway to access a dam release warning horn on the river. R. C. presented surveys referenced in the various deeds which identified this roadway as its easement. Some evidence was also presented to show that after the equestrian complex was developed in 1998 by Silver Creek, a predecessor in title to the M. P. defendants, a barn blocked a portion of this existing roadway, and a gravel drive was installed around it.

The location of the easement became an issue after Mommies Properties purchased the stable property in 2005 and blocked access to R. C.'s property, informing R. C. by e-mail that it could no longer use the roadway. R. C. presented evidence that after matters reached this impasse, it began negotiations with both the M.P. defendants and the Cambridge defendants to move the easement to a location agreeable to all the parties. Testimony was presented that a location was agreed upon, and that R. C. constructed a roadway at its expense, referred to by the

3

parties as the "New Road." This roadway, however, was also blocked by defendants, and this action followed.

(Footnote omitted.) *R. C. Acres I*, 331 Ga. App. at 764-765 (1).

R. C. filed a complaint seeking to quiet title to its easement and for damages for interference with its use and enjoyment of the easement, and the case ultimately proceeded to trial against multiple defendants, including the Cambridge defendants and the M. P. defendants. The jury trial that ensued was bifurcated. The first phase of the trial addressed the original and final locations of the easement over the defendants' properties, and the second phase addressed whether and to what extent the defendants interfered with R.C.'s easement rights.

As part of the preparation of the special verdict form for the first phase of the trial, the trial court decided that the jury would be provided a redacted plat of the defendants' properties and would be asked to draw the original and final locations of the easement on the plat using colored markers. When the trial court provided the parties with its proposed redacted plat, R. C. objected to the plat and to the procedure proposed by the trial court for identifying the original and final locations of the easement. R. C. took issue with the fact that the redacted plat prepared by the trial court showed the outline of "Old Woods Road" and the southern boundary line of the

4

defendants' properties, but not the outline of the "New Road," which was another possible location of the easement that could be found by the jury. R. C. argued that

> [s]hould the jury select some place other than what might clearly be Old Woods Road or might clearly be the southern boundary of the property when they locate the easement on the property, we are all going to be left to guess. They obviously won't be able to make a survey with a colored marker, and we will be left to guess where on the ground that the jury indicated to locate the easement.

R. C. proposed that the jury instead be given a clear choice between a limited number of alternative locations for the easement based on the evidence and argument presented by the parties at trial.

The M. P. defendants responded that the redacted plat and the procedure proposed by the trial court would result in the identification of the original and final locations of the easement with sufficient certainty because "[t]he Court has authority to interpret the verdict in connection with future proceedings." The M.P. defendants noted that "if, for example, the jury were to . . . come up with a path that follows even roughly where the location of [the] new road is," the court could refer to other surveys in the record to identify the easement intended by the jury.

The trial court overruled R.C.'s objections to the redacted plat and to the procedure for having the jury identify the original and final locations of the easement. The trial court concluded that "wherever . . . [the jurors] mark the location of the easement, the Court will be able to interpret that location" to scale.

In its subsequent charge to the jury in the first phase of the trial, the trial court discussed the special verdict form with the jurors. The trial court instructed the jurors to answer the questions on the form about the location of the original deeded easement, whether the easement had been relocated, and, if so, when the relocation had occurred. In discussing the redacted plat attached as an exhibit to the special verdict form, the trial court instructed the jurors to draw the original deeded easement and the relocated easement on the plat, which had a graphics scale attached to it showing how many feet equaled one inch, and the court provided the jury a survey scale, a calculator, colored markers, and extra copies of the redacted plat. The trial court clarified that "[i]n deciding the issue of whether the deeded easement was relocated, and if so, to what location, [the jurors were] not to consider the issue of the width of any such relocated easement," which was an issue for the court to determine. The trial court also later clarified, in response to a question from jurors, that the

6

reference to the "relocated" easement in the special verdict form meant the final location of the easement.

Following its deliberations, the jury returned a special verdict form finding that the original location of the easement was "parallel to the southern boundary" of the property, that the easement had been relocated, and that the relocation had occurred in "Fall 2008." On the redacted plat attached to the special verdict form, the jury drew two lines with the colored markers, labeling one "Deeded Easement" and the other "New-Relocated Road."

The jury's special verdict form and redacted plat were incorporated into the trial court's judgment after the second phase of the bifurcated trial.[2] The judgment did not reduce to scale or include a metes and bounds description of the original and final locations of the easement. Although the trial court had previously determined as a matter of law that the width of the easement was 60 feet, that determination also was not incorporated into the judgment.

_____

[2] In the second phase of the bifurcated trial, the jury awarded damages to R. C. against the Cambridge defendants for interference with its easement, but found in favor of the M. P. defendants on R. C.'s interference claim. The second phase of the bifurcated trial is not at issue in the present appeal.

R.C. appealed from the judgment entered by the trial court, contending, among other things, that the judgment did not adequately identify or describe the final location of the easement, thereby preventing R.C. from obtaining marketable title.[3] See *R. C. Acres I*, 331 Ga. App. at 769 (3). In *R. C. Acres I*, we agreed with R. C. that the description of the easement in the judgment was not sufficiently certain. 331 Ga. App. at 769-770 (3). Accordingly, we vacated the portion of the judgment regarding the final location of the easement, and we remanded with the direction "that the trial court amend the judgment to conform to the jury's verdict and the evidence, to make the description of the easement sufficiently certain." Id. at 770 (3).[4]

On remand, R. C. filed a motion requesting that the trial court appoint a land surveyor to prepare a survey and legal description of the final location of the easement on the M. P. defendants' property that would be plotted along the route of

_____

[3]R. C. had filed a motion to amend the judgment, but the trial court did not have the opportunity to rule on the motion before R. C. filed its notice of appeal.

[4] In *R. C. Acres I*, we also held that the trial court erred by limiting the jury's consideration of the easement to its original and final locations and by improperly restricting R. C.'s cross-examination of a defense witness. 331 Ga. App. at 763-769 (1), (2). We reversed and remanded for a retrial of the second phase of the bifurcated trial, id. at 767 (1), but the second phase was never retried because the parties reached a settlement on the claims related to that phase of the proceedings.

the "New-Relocated Road" as built in Fall 2008.[5] R. C. subsequently retained a surveyor, who identified the actual gravel road that had been built near the southern boundary line of the M. P. defendant's property and then prepared a survey of the easement based on the route of that road.

The trial court, however, did not incorporate R. C.'s commissioned survey that was based on the location of the existing gravel road into the amended judgment. Instead, the trial court directed the surveyor to reduce to scale and provide a legal description of the final location of the easement on the M. P. defendant's property by precisely following the line as drawn with a marker by the jury on the redacted plat. Specifically, over R.C.'s objection, the trial court directed the surveyor to mark the jury's hand-drawn line as the centerline of the easement, plot the centerline with a metes and bounds description, and then identify and plot 30 feet on either side of the centerline with a metes and bounds description. The trial court acknowledged that the evidence showed that "an actual gravel road" existed on M. P.'s property that might fall within the boundaries of the easement as plotted by the surveyor based on the jury's hand-drawn line, and the court directed that the surveyor also depict the "as-

_____

[5] R. C. reached a settlement with the Cambridge defendants regarding the final location of the easement over their property.

9

built gravel road" on the survey so that it could be compared to the location of the plotted easement.

As directed by the trial court, the surveyor completed the survey reflecting the final location of the 60-foot easement based strictly on the hand-drawn line made by the jury on the redacted plat. The surveyor also depicted the location of the existing gravel road near the southern boundary of M.P.'s property for comparison purposes. Most of the gravel road fell within the 60-foot easement that the surveyor plotted based on the line drawn by the jury. On one small portion of the survey, however, the gravel road fell outside the boundaries of the easement as drawn by the surveyor.

During a hearing conducted to address the survey that had been prepared at the direction of the trial court, R. C. again argued that the plotting of the final location of the easement by the surveyor should be based on the actual location of the gravel road rather than on the jury's hand-drawn line on the redacted plat. According to R. C., the jury's findings in the special verdict form and labeling of the easements on the redacted plat clearly showed that the jury intended for the existing gravel road near the southern boundary line, i.e., the "New-Relocated Road" built in Fall 2008, to be the final location of the easement, and the jury's freehand drawing of the line on the

10

plat with the colored marker was simply the jury's best effort to approximate the location of that road.

The trial court disagreed with R. C. and entered an amended judgment incorporating the survey and legal description of the final location of the easement that was based strictly on the hand-drawn line made by the jury on the redacted plat. Consequently, a portion of the existing gravel road fell outside the boundaries of the easement under the amendment judgment entered by the trial court. R. C. now appeals from the amended judgment.

In this appeal, R. C. contends that the trial court erred on remand by failing to conform the amended judgment to the reasonable intendment of the verdict and the evidence presented at trial. According to R. C., the jury clearly intended for the final location of the easement to be the "New-Relocated Road" as built on the M.P. defendant's property in Fall 2008, which was the existing gravel road shown on the plat drawn by the surveyor as directed by the trial court. Given the jury's intent in reaching its verdict and the evidence presented at trial, R.C. argues that the trial court erred by entering an amended judgment that incorporated a survey based strictly on the line drawn by the jury on the redacted plat, which caused a portion of the gravel road to fall outside the boundaries of the plotted easement. We agree.

11

Judgment and execution shall conform to the verdict, and a judgment may be amended by order of the court to conform to the verdict upon which it is predicated, even after an execution issues. The judgment must conform to the reasonable intendment of the verdict upon which it is based, as determined by an inspection of the record, including the verdict and pleadings. Consequently, the trial court was required to examine the record and determine if the jury's intent plainly appeared upon the face of the record.

(Citation and punctuation omitted.) *R. C. Acres I*, 331 Ga. App. at 769 (3). See OCGA §§ 9-12-4; 9-12-9; *Turley v. Turley*, 244 Ga. 808, 809 (262 SE2d 112) (1979); *Kaufman Dev. Partners v. Eichenblatt*, 324 Ga. App. 71, 75-76 (3) (749 SE2d 374) (2013). Mindful of these principles, we turn to the record in this case.

During the first phase of the bifurcated jury trial, Benjamin Friedman, R. C.'s representative, testified that in 2008, he reached an agreement with the M. P. defendants to build a new road near the southern boundary of their property that would provide a new means of access to R. C.'s property. Mr. Bose, the manager of Mommies Properties, likewise testified that the M. P. defendants had reached an agreement with Mr. Friedman regarding the location and construction of the new road, and the owner of the stables operated on the M. P. defendant's property

12

similarly confirmed that Mr. Bose had reached an agreement regarding the new road with Mr. Friedman.

According to Mr. Friedman, once the parties reached an agreement regarding the new road, he had a 20-foot-wide road that cost $60,000 constructed near the southern boundary of the M. P. defendant's property over a three-week period in Fall 2008, and he identified the dirt-and-gravel road in several photographs that were introduced into evidence. Mr. Friedman also testified that before building the new road, he had commissioned the services of a surveyor to document the proposed location, and the surveyor's plat showing the proposed location of the new road was introduced into evidence as Plaintiff's Exhibit 213. While testifying about the new road, Mr. Friedman drew a red line on Plaintiff's Exhibit 213 showing the route of the road that had been built.

At the end of the first phase of the trial, when the jury returned its special verdict identifying the final location of the easement, the jury found, as previously noted, that the easement had been relocated in "Fall 2008" and labeled its hand-drawn line of the final location of the easement on the redacted plat as the "New-Relocated Road." The jury's hand-drawn line of the easement on the redacted plat closely

approximated the route of the new road as drawn by Mr. Friedman on Plaintiff's Exhibit 213.

Based on this trial evidence, the special verdict form, and the redacted plat, it is clear that the jury intended for the final location of the easement to be the new road built by Mr. Friedman along the southern boundary of the M. P. defendants' property in Fall 2008. Thus, for the amended judgment to properly conform to the reasonable intendment of the jury's verdict, the new road built by Mr. Friedman in Fall 2008 had to fall within the boundaries of the plotted easement incorporated into the judgment.

Here, however, the survey ordered by the trial court on remand and incorporated into the judgment includes a small area where the road labeled "existing gravel drive" near the southern boundary of the M. P. defendant's property falls outside the boundaries of the plotted easement. And the route of the "existing gravel drive" shown on the survey is consistent with the route of the new road built by Mr. Friedman in Fall 2008 as reflected in the trial evidence, including Plaintiff's Exhibit 213, the plat of the proposed new road that Mr. Friedman marked during his testimony, and Defense Exhibit 5-B, another survey of the property showing the aforesaid "gravel drive." Thus, the survey shows that a portion of the new road built by Mr. Friedman in Fall 2008 falls outside the boundaries of the plotted easement

14

incorporated into the amended judgment by the trial court. Accordingly, because the jury clearly intended for the easement to encompass the new road built by Mr. Friedman in Fall 2008, we conclude that the trial court erred by amending the judgment on remand in a manner that failed to conform to the reasonable intendment of the verdict and the evidence presented at trial regarding the location of the new road. See OCGA §§ 9-12-4; 9-12-9; *Turley*, 244 Ga. at 809; *R. C. Acres I*, 331 Ga. App. at 769 (3); *Kaufman Dev. Partners*, 324 Ga. App. at 75-76 (3).

In reaching this conclusion, we reject the defense argument, accepted by the trial court, that the jury's intent in reaching its verdict was conclusively demonstrated by the actual line drawn by jurors on the redacted plat, and that the survey incorporated into the judgment had to be based strictly on the hand-drawn line. "Verdicts . . . shall receive a reasonable construction," OCGA § 9-12-4, and here the only reasonable construction of the verdict is that the jury meant for the easement to be placed along the new road built by Mr. Friedman in Fall 2008, rather than some slightly different, alternative course that would require R. C. to relocate a portion of the road for no apparent purpose and at additional expense. This is particularly true when the jury's freehand drawing is viewed in conjunction with the finding in the special verdict form that the easement was relocated in "Fall 2008" and with the

15

labeling of the hand-drawn line as the "New-Relocated Road." Furthermore, the redacted plat provided to the jury did not include an outline of the new road, and lay jurors of course are not professional land surveyors, and thus it is not surprising that the freehand line drawn by the jurors did not perfectly match the location of the new road on the ground. Consequently, the slight deviation between the jury's hand-drawn line and the actual roadway does not alter our conclusion that the jury intended for the new road as built in Fall 2008 to be final location of the easement.

The M. P. defendants also contend that the freehand line drawn by the jury on the redacted plat for the final location of the easement precisely matches the route of the road as hand-drawn by Mr. Friedman on Plaintiff's Exhibit 213. Consequently, the M. P. defendants maintain that there was an evidentiary basis for where the jury specifically drew the line on the plat, that the jury in fact gave R. C. the easement that it requested, and that the trial court properly based the survey of the final location of the easement on the exact line drawn by the jury.

However, we have compared the jury's redacted plat to Plaintiff's Exhibit 213, and the line drawn by the jury for the route of the new road does not entirely match the line drawn by Mr. Friedman. Furthermore, the redacted plat used by the jury is somewhat larger in size than the plat shown on Plaintiff's Exhibit 213, and the

16

graphic scales on the two plats are slightly different. Thus, while the jury's freehand line drawn on the redacted plat may be a close approximation of the line drawn by Mr. Friedman on Plaintiff's Exhibit 213, the two lines are not the same.

Furthermore, the M. P. defendants' argument about the matching lines is predicated on the incorrect assumption that the line drawn freehand by Mr. Friedman on Plaintiff's Exhibit 213 at trial was intended to be an exact rendering of the route of the new road. Mr. Friedman was not a trained surveyor, and after depicting the route of the new road on the exhibit, he was asked on cross-examination, "That's all you want the jury to give you is this new road we built?," and he replied, "That's what we had agreed upon, yes, sir." When asked again later in his testimony about the final location of the easement, Mr. Friedman reiterated, "I would love to use the road that I built. I want to use the road that I built."

It is clear from Mr. Friedman's testimony that he was requesting that the jury place the final location of the easement along the new road as built in Fall 2008, and that his freehand rendering of the route of the new road on Plaintiff's Exhibit 213, when viewed in context, was intended to be his best approximation of that route, rather than the precise rendering of an expert land surveyor. Thus, to the extent that the jury relied upon Mr. Friedman's line in attempting to depict the final location of

17

the easement on the redacted plat, the jury was doing nothing more than signaling that the final easement should be placed along the new road as built in Fall 2008, as Mr. Friedman had requested and made clear in his testimony.

Additionally, the M. P. defendants argue that the jury did not and could not have intended to place the final location of the easement precisely along the new road built by Mr. Friedman because if the road had been used as the centerline of the easement, a few feet of the 60-foot wide easement would have encroached onto a neighboring property in one location. But the M. P. defendants' argument is based on the erroneous assumption that the jury was drawing a line that was intended to represent the precise centerline of the easement, with the easement's boundary to be placed exactly 30 feet on each side of their line. That is not what the jury was instructed to do. The jury was simply instructed to draw a single line representing the final route of the easement, without any reference in the instructions to the centerline or how the precise 60-foot wide boundary of the easement would be determined. Indeed, the trial court instructed the jury "not to consider the issue of the width of . . . [the] relocated easement" as part of its deliberations. Hence, whether or to what extent the centerline of the new road as built in Fall 2008 was less than 30 feet from

18

the boundary line of the M.P. defendant's property on one side simply had no bearing on the jury's verdict reached in this case.[6]

Lastly, the M. P. defendants allege that R. C. altered the route of the new road post-verdict and judgment, such that R. C. is now seeking entry of an amended judgment awarding a final easement location different from what it sought at trial. The M. P. defendants argument is without merit and has no support in the record. To support their allegation that the new road had been altered, the M. P. defendants rely solely on argument of counsel and unsworn statements made at a trial court hearing conducted on remand, neither of which constitute compete evidence. See *Watson v. Ga. Dept. of Transp.*, 288 Ga. App. 40, 42, n.2 (653 SE2d 763) (2007) (counsel's statements at hearing are not evidence); *Parker v. Silviano*, 284 Ga. App. 278, 279 (1) (643 SE2d 819) (2007) ("unsworn allegations are not evidence") (citation omitted). Hence, there is no competent evidence of record that any work was

---

[6]We also note that there was no requirement, based on the verdict and evidence presented at trial, that the new road be used as the *centerline* of the 60-foot easement for purposes of reducing the final location of the easement to a metes-and-bounds description as part of the amended judgment. Rather, to be consistent with the reasonable intendment of the verdict and the trial evidence, the new road simply had to come within the 60-foot boundary of the easement as plotted.

performed on the new road after the trial or that the new road has been moved from where it was built in Fall 2008.

In sum, the jury's findings in the special verdict form and the jury's drawing and labeling of the easement on the redacted plat, when viewed in conjunction with the evidence presented at trial, demonstrate that the jury intended for the final location of the easement to be along the new road as built by Mr. Friedman on the M. P. defendants' property in Fall 2008. Because the trial court amended the judgment on remand to incorporate a survey that excluded a portion of the new road from the easement, the amended judgment does not conform to the reasonable intendment of the verdict and the evidence presented at trial. We therefore must reverse the amended judgment and remand for the trial court to conform the judgment to the jury's verdict and the evidence in a manner consistent with this opinion. See *Taylor v. Taylor*, 212 Ga. 637, 638 (1) (94 SE2d 744) (1956) (judgment did not conform to verdict, where judgment included award of property to wife different from what was intended by the jury in light of the pleadings and evidence presented at trial); *Pinkerton & Laws v. Macro Constr.*, 226 Ga. App. 169, 172 (4) (b) (485 SE2d 797) (1997) (trial court ordered to amend judgment to reflect true meaning and intent of jury to enter award in favor of general contractor on its claim for breach of subcontract). Compare *Norton*

*Realty & Loan Co. v. Bd. of Ed. of Hall County*, 129 Ga. App. 668, 673-674 (3) (200 SE2d 461) (1973) (trial court properly amended judgment to incorporate a plat and thereby conform the description of certain condemned lands to the evidence and verdict, where it was clear that "the amendment had the effect merely of carrying out the intendment of the original verdict") (citations and punctuation omitted).

*Judgment reversed and case remanded with direction. Boggs and Rickman, JJ., concur*.