**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 13, 2015**

# In the Court of Appeals of Georgia

A15A1115. ALESSI v. CORNERSTONE ASSOCIATES, INC.

BRANCH, Judge.

Gary and Melissa Alessi appeal from an order of the Superior Court of Spalding County granting the petition of Cornerstone Associates, Inc. for an award of costs and attorney fees under Georgia's offer of judgment statute, OCGA § 9-11-68. The Alessis contend that the trial court erred in granting the petition because in doing so it erroneously held that OCGA § 9-11-68 applies to claims that were decided during binding arbitration instead of civil litigation. For reasons explained more fully below, we agree with the Alessis and therefore reverse the order of the trial court.

"Because this appeal involves a question of law, we review both the record and the decision of the court below de novo." *Johnson v. Allied Recycling*, 323 Ga. App. 427 (746 SE2d 728) (2013) (citation and punctuation omitted).

The relevant facts are undisputed and the record shows that on December 22, 2006, the Alessis and Cornerstone entered into a "New Home Purchase and Sale Agreement." Under that agreement, Cornerstone agreed to construct and the Alessis agreed to purchase a home in the Heron Bay-Lakeview subdivision in Locust Grove. Paragraph 9 of that agreement, captioned "Mandatory Binding Arbitration," provided, in relevant part:

> Seller and Buyer . . . acknowledge that in the event of disputes which are not informally resolved, resolution of those disputes will best be achieved through arbitration rather than civil litigation because of the substantial savings of time and expense for all parties and because of the privacy and flexibility associated with arbitration procedures. If Seller provides a warranty to Buyer, then the terms and procedures of that warranty shall first apply to any claim or dispute, which is within the coverage of that warranty. . . . Any unresolved claim or dispute between Seller and Buyer arising out of or relating to such warranty, if any, and any other claim or dispute of any kind or nature between Seller and Buyer arising out of or relating in any manner to this Agreement or this transaction shall be decided by binding arbitration in accordance with the Federal Arbitration Act and with the rules and procedures of the arbitrator and such decision shall be final.

On August 29, 2011, the Alessis filed a demand for arbitration with Construction Arbitration Associates, the arbitrator designated in the parties' agreement. In their demand, the Alessis asserted claims against Cornerstone for breach of contract, breach of an oral agreement, negligent construction, breach of warranty, unjust enrichment, and attorney fees.

On June 12, 2012, Cornerstone sent the Alessis a written offer to settle all of their claims against Cornerstone for $3,000. The offer stated that it was made "pursuant to the provisions of OCGA § 9-11-68." The Alessis responded to this offer on July 6, 2012, rejecting the same.

The case proceeded to arbitration and on April 8, 2013, the arbitrator issued an written decision in which he awarded no money to either party. Specifically, the arbitrator's award stated:

> With regard to the [Alessis's] claim[s], this Arbitrator awards $0.00 for the [Alessis] and $0.00 for [Cornertsone]. All other fees and expenses[,] including attorney[ ] fees incurred by the parties[,] shall be borne by the party producing such. THIS AWARD IS IN FULL SATISFACTION OF ALL CLAIMS AND COUNTERCLAIMS SUBMITTED TO ARBITRATION.

(Emphasis in original.)

3

On August 29, 2013, Cornerstone filed in the trial court an application for confirmation of the arbitration award and a request for attorney fees and expenses under OCGA § 9-11-68. Cornerstone asserted that after it made its written offer of settlement, it incurred $67,268.41 in attorney fees and expenses during the arbitration process. In support of its claim for fees and costs, Cornerstone submitted the affidavit of its attorney and other documentary evidence. The Alessis opposed the request for attorney fees and costs, arguing that OCGA § 9-11-68 did not apply to claims decided through binding arbitration. Following a hearing, the trial court entered an order confirming the arbitration award and awarding Cornerstone attorney fees and costs incurred between June 12, 2012 and April 8, 2013. The trial court subsequently entered a final judgment in favor of Cornerstone and against the Alessis in the amount of $67,268.41. The Alessis now appeal from that order of judgment.

The sole issue on this appeal is whether OCGA § 9-11-68 applies to claims decided through binding arbitration, rather than through traditional civil litigation. The offer of judgment statute provides, in relevant part:

(a) At any time more than 30 days after the service of a summons and complaint on a party but not less than 30 days (or 20 days if it is a counteroffer) before trial, either party may serve upon the other party, but shall not file with the court, a written offer, denominated as an offer

4

under this Code section, to settle a tort claim[1] for the money specified in the offer and to enter into an agreement dismissing the claim or to allow judgment to be entered accordingly. . . .

(b) (1) If a defendant makes an offer of settlement which is rejected by the plaintiff, the defendant shall be entitled to recover reasonable attorney's fees and expenses of litigation incurred by the defendant or on the defendant's behalf from the date of the rejection of the offer of settlement through the entry of judgment if the final judgment is one of no liability or the final judgment obtained by the plaintiff is less than 75 percent of such offer of settlement.

OCGA § 9-11-68 (a), (b) (1).

In determining whether this statute applies to cases that are subject to binding arbitration, we bear in mind that "[t]he cardinal rule" of statutory construction "is to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose." *RadioShack Corp. v. Cascade Crossing II*, 282 Ga. 841, 843 (653 SE2d 680) (2007) (citation and punctuation omitted). With respect to the legislature's intent,

---

[1] In their brief, the Alessis argue that because at least three of the claims they asserted against Cornerstone (breach of contract, breach of an oral agreement, and breach of warranty) were contractual claims, Cornerstone is not entitled to recover any fees or costs associated with the defense of those claims. In light of our conclusion that OCGA § 9-11-68 does not apply to claims decided through arbitration, however, we need not decide this issue.

5

we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. . . . Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

*Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted). Moreover, because OCGA § 9-11-68 entitles one party to an award of attorney fees and costs, it "is in derogation of common law . . . [and] it must be strictly construed against the award of such damages." *Joyner v. Raymond James Financial Svcs.*, 268 Ga. App. 835, 838-839 (2) (602 SE2d 871) (2004) (citation and punctuation omitted). See also *Heard v. Neighbor Newspapers*, 259 Ga. 458, 459 (5) (b) (383 SE2d 553) (1989).

Here, the plain language of OCGA § 9-11-68 reflects that the legislature contemplated that it would apply only in the context of traditional civil litigation and not in the context of alternative dispute resolution. Notably, the time frame in which a settlement offer must be made is "30 days after the *service of a summons and complaint* . . . but not less than 30 days . . . *before trial*." (emphasis supplied). Service

6

of a summons and complaint, of course, is the way in which a traditional civil lawsuit is initiated. Binding arbitration, however, is not initiated in this fashion. As the record in this case reflects, binding arbitration is initiated by the filing of a demand for arbitration. And there is no requirement that a claimant filing such a demand perfect service thereof in the same way that a civil litigant must perfect service of a summons and complaint.

Furthermore, an arbitration proceeding is not a trial. As the parties' agreement to arbitrate acknowledges, arbitration differs from a trial in that it is usually more economical and affords the parties more privacy and flexibility. There are also significant substantive and procedural differences between an arbitration proceeding and a trial. As the United States Supreme Court has explained, "arbitral factfinding is generally not equivalent to judicial factfinding. . . . [T]he record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." *McDonald v. City of W. Branch, Mich.*, 466 U. S. 284, 291 (II) (B) (104 SCt 1799, 80 LEd2d 302) (1984) (citations and punctuation omitted.) See also *Greene v. Hundley*, 266 Ga. 592, 595 (2) (468 SE2d 350) (1996) ("arbitrating parties agree to waive

certain such rights in favor of a quick resolution of their dispute by extralegal means. Indeed, . . . by electing arbitration, the parties can agree to waive certain constitutional and procedural rights to which they would be entitled in a judicial forum, such as the right to trial by a jury") (footnote omitted). And unlike a judgment rendered in the trial court, judicial review of an arbitration award is extremely limited. Id. at 597 (3) (arbitration is not "subject to traditional rules of appellate review" and a court in a confirmation proceeding may not determine whether there is sufficient evidence to support an arbitration award); OCGA § 9-9-13 (d) ("[t]he fact that the relief [awarded by the arbitrator] was such that it could not or would not be granted by a court of law or equity is not ground for [a reviewing court's] vacating or refusing

8

to confirm the award"). Thus, despite Cornerstone's arguments to the contrary,[2] the mere fact that an arbitration award is subject to a confirmation proceeding in a court of law does "not make arbitration a part of the judicial process. . . . To the contrary, arbitration is a unique procedure that exists in Georgia due to legislative fiat, and it is conducted in accordance with the rules established by the legislature." *Greene*, 266 Ga. at 597 (3).

Additionally, the General Assembly's failure to include any reference to arbitration proceedings in the express language of OCGA § 9-11-68 also supports our

---

[2] In its brief, Cornerstone correctly notes that a proceeding to confirm an arbitration award is a special statutory proceeding and is therefore subject to the provisions of the Civil Practice Act. See OCGA § 9-11-81 (the Civil Practice Act "shall apply to all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict herewith are expressly prescribed by law"); *Hardin Constr. Group v. Fuller Enterprises*, 265 Ga. 770, 772 (462 SE2d 130) (1995). Cornerstone then reasons that because OCGA § 9-11-68 is part of the Civil Practice Act, it should apply to arbitration proceedings. The flaw in this argument is that the arbitration proceeding itself, unlike the confirmation proceeding, is not subject to the Civil Practice Act. See *LecStar Telecom v. Grenfell*, 273 Ga. App. 712, 713 (1) (616 SE2d 482) (2005) (although the legislature incorporated portions of the Civil Practice Act into the statutory framework for confirming an arbitration award, the Georgia Arbitration Code "contains certain procedural rules uniquely tailored to arbitration"); *Joyner*, 268 Ga. App. at 840 (2), n. 6 ("[f]ederal and state rules of civil procedure often do not apply in arbitration proceedings or are severely limited"). And the offer of settlement that resulted in Cornerstone's petition for attorney fees and costs occurred during the course of the underlying arbitration, not in the course of the confirmation proceeding.

conclusion that the legislature did not intend that statute to apply in the context of arbitration. We presume that the General Assembly enacted OCGA § 9-11-68 "with full knowledge of the existing condition of the law and with reference to it," and we therefore must construe that statute "in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence"; its "meaning and effect is to be determined in connection . . . with reference to other statutes and decisions of the courts." *Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 93 (1) (327 SE2d 188) (1985) (citations and punctuation omitted). Here, we note that OCGA § § 9-9-12, 9-9-13, and 9-9-14, which address the judicial confirmation, vacation, and modification of an arbitration award, were in existence at the time the legislature adopted the offer of judgment statute as part of the 2006 Tort Reform Act. Accordingly, at the time it enacted OCGA § 9-11-68, the General Assembly was aware that arbitration awards can result in judgments of the court. Despite this knowledge, however, the legislature did not include settlement offers made during the course of arbitration within the express provisions of OCGA § 9-11-68. The absence of any such express language further confirms our conclusion that this statute does not apply to offers to settle claims subject to binding arbitration.

In light of the foregoing, we conclude that the General Assembly did not intend OCGA § 9-11-68 to apply to awards resulting from arbitration proceedings.[3] We therefore reverse the order of the trial court granting Cornerstone's petition for attorney fees and costs under OCGA § 9-11-68 and the related judgment in favor of Cornerstone and against the Alessis.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*

---

[3] We note that our holding is in accord with the appellate courts of several other states, each of which has held that an offer of judgment statute has no application to settlement offers made in the context of binding arbitration. See *Nunno v. Wixner*, 778 A2d 145, 148-149 (Conn. 2001) (rejecting the plaintiff's contention that court-ordered arbitration should be viewed as a "civil action," to which Connecticut's offer of judgment statute applied); *Lane v. Williams*, 621 NW2d 922, 925-926 (Wis. 2000) (Wisconsin's offer of judgment statute, which expressly applies to settlement offers made prior to "trial," was inapplicable to an arbitration proceeding, as such a proceeding does not involve a trial); *Mackie v. Chizmar*, 965 P2d 1202, 1206 (III) (B) (2) (Alaska 1998) (holding that Alaska's offer of judgment statute was not applicable to claims decided through binding arbitration and noting that such an interpretation of the statute "furthers the [law's] purposes because it encourages parties . . . to choose dispute resolution methods that avoid unnecessary litigation").