**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 1, 2017**

# In the Court of Appeals of Georgia

A16A1748. HARRIS v. MAHONE.

DILLARD, Presiding Judge.

Following a jury verdict in Timothy Harris's favor in his negligence action against Stanley Mahone, the trial court denied Harris's requests for attorney fees under OCGA § 9-11-68 and § 9-15-14. Harris appeals, arguing that the trial court misconstrued OCGA § 9-11-68 in finding that, although he was entitled to attorney fees under the statute, he did not incur any fees during the applicable time period. He further contends that the trial court erred in denying his motion for attorney fees under OCGA § 9-15-14 because the court did so based solely on an erroneous factual finding. For the reasons set forth *infra*, we affirm in part, reverse in part, and remand the case with direction.

The facts underlying this appeal are largely undisputed. On May 9, 2014, Harris filed a complaint against Mahone, asserting negligence claims arising from a car accident that occurred on May 14, 2013. According to Harris, Mahone rear-ended his car, which caused him serious injuries. After Mahone filed his answer, he submitted a handwritten statement, admitting that he hit the back of Harris's car, but claiming that the collision was the result of a "[ch]ain reaction" in which Mahone's car was first rear-ended by the car behind him. In the pretrial order, Mahone again admitted fault for the accident, but disputed that the accident caused Harris's injuries or the amount of damages that he claimed to have suffered. Nevertheless, on September 8, 2015, a few weeks prior to trial, Mahone sent Harris a written settlement offer for $15,000, which provided that, in compliance with OCGA § 9-11-68, the offer would be deemed rejected if it was not accepted within 30 days. A few days later, on September 11, 2015, Harris responded with a counteroffer to settle the case for $22,000, and similarly to Mahone's offer, indicated that it would remain open for 30 days.

After the parties failed to reach a settlement agreement, a jury trial commenced on October 5, 2015, and at the conclusion of trial on October 8, 2015, the jury found in Harris's favor, awarding him $35,000 in damages. Several weeks later, on

November 1, 2015, the trial court issued a final order approving the jury's verdict. Then, on November 18, 2015, Harris filed a motion for attorney fees under OCGA § 9-11-68, asserting that he was entitled to such fees because he received a monetary judgment that was more than 125 percent of his $22,000 pretrial counteroffer.[1] In response, Mahone argued that Harris was not entitled to fees under OCGA § 9-11-68 because he never rejected the counteroffer in writing, which is "explicitly and unambiguously required" under the statute. Additionally, Mahone argued that Harris was not entitled to attorney fees because, after trial, the jury foreman informed both parties that the jury increased its original award of damages by 44 percent to account for Harris's attorney fees. Thus, Mahone contended, Harris had already been compensated for his attorney fees.

In support of his argument that attorney fees were included in the jury's lump-sum award, Mahone's counsel executed an affidavit recounting what was allegedly conveyed to them by the jury foreman regarding the manner in which the jury calculated damages. Harris then filed a motion to strike "hearsay portions" of Mahone's response to his motion for fees and accompanying affidavit, arguing that

---

[1] *See* OCGA § 9-11-68 (b) (2) (providing for an award of attorney fees and litigation costs to a plaintiff when the jury awards him or her 125 percent or more of a pretrial settlement offer that was rejected by the defendant).

any reference to statements allegedly made by jurors was inadmissible hearsay and also improper juror testimony under OCGA § 24-6-606.[2] In addition, Harris filed a motion for attorney fees under OCGA § 9-15-14 (a) and (b), arguing that he was entitled to the fees he incurred in bringing the motion to strike because Mahone's use of inadmissible hearsay was absent of any justiciable issue of law or fact and lacked substantial justification.

On March 21, 2016, the trial court held a hearing on Harris's motions for attorney fees and his motion to strike hearsay portions of Mahone's responsive pleadings. Thereafter, the court issued an order finding that under OCGA § 9-11-68 Harris was entitled to any attorney fees he incurred from October 11, 2015,[3] through

[2] *See* OCGA § 24-6-606 (b) ("Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify by affidavit or otherwise nor shall a juror's statements be received in evidence as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the jury deliberations or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith . . . .").

[3] The trial court found that, under OCGA § 9-11-68, Harris could recover any attorney fees he incurred beginning 30 days after he made the September 11, 2015 counteroffer. But while the trial court calculated that date to be October 10, 2015, the 30th day following September 11, 2015, was actually October 11, 2015. This apparently inadvertent one-day discrepancy has no bearing on the outcome of this appeal, and as a result, for the sake of clarity, we refer only to October 11, 2015, as the 30th day following Harris's counteroffer.

4

November 1, 2015, but awarding him no fees because he failed to show that he actually incurred any fees following the conclusion of trial on October 8, 2015. The court also denied Harris's motion for attorney fees under OCGA § 9-15-14, as well as his motion to strike hearsay testimony. This appeal by Harris follows.

1. Harris first argues that, while the trial court correctly found that he was eligible for an award of attorney fees under OCGA § 9-11-68, the court misconstrued the statute in concluding that he was not entitled to the fees he incurred during trial. We disagree.

At the outset, we note that the interpretation of a statute is a question of law, which is "reviewed de novo on appeal."[4] Indeed, when only a question of law is at issue, as here, we "owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review."[5] And when interpreting any statute, we necessarily

---

[4] *Brantley Land & Timber, LLC v. W & D Investments, Inc.*, 316 Ga. App. 277, 279 (729 SE2d 458) (2012) (punctuation omitted); *see also Lue v. Eady*, 297 Ga. 321, 326 (2) (a) (773 SE2d 679) (2015) ("The interpretation of statutes . . . presents a question of law for the court.").

[5] *Coker v. Moemeka*, 311 Ga. App. 105, 107 (1) (714 SE2d 642) (2011) (punctuation omitted); *accord Artson, LLC v. Hudson*, 322 Ga. App. 859, 860 (747 SE2d 68) (2013).

begin our analysis with "familiar and binding canons of construction."[6] In considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[7] Toward that end, we must afford the statutory text its plain and ordinary meaning,[8] consider the text contextually,[9] read the text "in its most natural and reasonable way, as an ordinary

---

[6] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *accord In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014); *Kemp v. Kemp*, 337 Ga. App. 627, 632 (788 SE2d 517) (2016); *see, e.g.*, *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013) (examining the text of a statute with the "canons of construction in mind").

[7] *Holcomb*, 329 Ga. App. at 517 (1) (punctuation omitted); *accord Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015); *May v. State*, 295 Ga. 388, 391 (761 SE2d 38) (2014); *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

[8] *Holcomb*, 329 Ga. App. at 517 (1); *accord Deal*, 294 Ga. at 172 (1) (a); *see also State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies) . . . .").

[9] *Holcomb*, 329 Ga. App. at 517 (1); *see also Arizona v. Inter Tribal Council of Arizona, Inc.*, ___ U.S. ___ (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation and citation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Scherr v. Marriott Int'l, Inc.*, 703 F3d 1069, 1077 (II) (C) (2) (7th Cir. 2013) (Manion, J.) (noting that in statutory construction cases, courts "begin with the language of the statute itself and the specific context in which that language is used.") (punctuation and citation omitted).

6

speaker of the English language would,"[10] and seek to "avoid a construction that makes some language mere surplusage."[11] Further, when the language of a statute is "plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly."[12] Finally, because any statute that provides for the award of attorney fees is "in derogation of common law, it must be strictly construed against the award of such damages."[13]

---

[10] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord Zaldivar v. Prickett*, 297 Ga. 589, 591 (774 SE2d 688) (2015); *Chan*, 296 Ga. at 839 (1); *FDIC v. Loudermilk*, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014); *Deal*, 294 Ga. at 172-73 (1) (a).

[11] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord In the Interest of L. T.*, 325 Ga. App. at 592; *Kennedy v. Carlton*, 294 Ga. 576, 578 (2) (757 SE2d 46) (2014); *Doe v. State*, 290 Ga. 667, 668 (725 SE2d 234) (2012).

[12] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord Luangkhot*, 292 Ga. at 424 (1); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[13] *Horton v. Dennis*, 325 Ga. App. 212, 216 (750 SE2d 493) (2013) (punctuation omitted); *accord Kemp*, 337 Ga. App. at 633; *Joyner v. Raymond James Fin. Servs., Inc.*, 268 Ga. App. 835, 838 (2) (602 SE2d 871) (2004); *Holland v. Caviness*, 292 Ga. 332, 337 (737 SE2d 669) (2013) ("A statute does not need to expressly say, 'this is intended to preempt the common law.' The actual canon of statutory construction is that statutes in derogation of the common law must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute." (punctuation omitted); *Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 364(1) (729 SE2d 378) (2012) (same).

Here, Harris does not appear to dispute that, although the trial court believed the outcome in this case was "bizarre," the court strictly construed OCGA § 9-11-68 and adhered solely to the plain language of the statute in denying him an attorney-fee award.[14] In doing so, the trial court applied the plain and unambiguous terms of OCGA § 9-11-68 to the facts of this case, correctly noting the interplay between subsections (a), (b) (2), and (c) of the statute.

OCGA § 9-11-68 (a) provides:

At any time more than 30 days after the service of a summons and complaint on a party but not less than 30 days (*or 20 days if it is a counteroffer*) before trial, either party may serve upon the other party, but shall not file with the court, a written offer, denominated as an offer under this Code section, to settle a tort claim for the money specified in the offer and to enter into an agreement dismissing the claim or to allow judgment to be entered accordingly.[15]

---

[14] As discussed more fully *infra*, rather than arguing that OCGA § 9-11-68 is ambiguous or that the trial court misapplied its terms, Harris maintains that the court erred in adhering to the plain language of the statute because doing so allows for the possibility of an "absurd" result and contravenes the "purpose" of the statute, which is to avoid unnecessary litigation.

[15] (Emphasis supplied).

8

Thus, under subsection (a), Harris was required to make his counteroffer at least 20 days prior to trial, which he did. Indeed, after Mahone made an initial written settlement offer of $15,000 on September 8, 2015, Harris responded with a written counteroffer of $22,000 on September 11, 2015, which was 24 days prior to the beginning of trial on October 5, 2015.[16]

The next subsection at issue, OCGA § 9-11-68 (c), provides:

*Any offer* made under this Code section *shall remain open for 30 days unless sooner withdrawn by a writing* served on the offeree prior to acceptance by the offeree, but an offeror *shall not be entitled to attorney's fees and costs* under subsection (b) of this Code section *to the extent an offer is not open for at least 30 days (unless it is rejected during that 30 day period)*. A counteroffer shall be deemed a rejection but may serve as an offer under this Code section if it is specifically denominated as an offer under this Code section. Acceptance or rejection of the offer by the offeree must be in writing and served upon the offeror. *An offer that is neither withdrawn nor accepted within 30*

---

[16] We acknowledge that Mahone's initial settlement offer was not made at least 30 days prior to trial, as required by OCGA § 9-11-68 (a). Indeed, Mahone's offer was dated September 8, 2015, which was only 27 days prior to when trial commenced on October 5, 2015. However, as Harris is the only party claiming entitlement to attorney fees under the statute, our focus is on the date of his counteroffer, which, in compliance with OCGA § 9-11-68 (a), was made at least 20 days prior to trial. *See* OCGA § 9-11-68 (a) (providing that a party may make a written settlement offer not less than 30 days (*or 20 days if it is a counteroffer*) before trial).

9

*days shall be deemed rejected.* The fact that an offer is made but not accepted does not preclude a subsequent offer.[17]

In compliance with the foregoing subsection, both Mahone's initial offer and Harris's counteroffer provided that each would remain open for 30 days. But, as previously discussed, Mahone never accepted or rejected Harris's counteroffer in writing, Harris never withdrew the counteroffer in writing, and the case was tried from October 5 to October 8, 2015 (*i.e.*, prior to the expiration of Harris's counteroffer). And applying the plain language of OCGA § 9-11-68 (c), the trial court correctly concluded that, under such circumstances, Harris's counteroffer—which was dated September 11, 2015—was deemed rejected 30 days later on October 11, 2015, which was three days *after* the trial's conclusion.[18]

Finally, under OCGA § 9-11-68 (b) (2),

[i]f a plaintiff makes an offer of settlement which is rejected by the defendant and the plaintiff recovers a final judgment in an amount greater than 125 percent of such offer of settlement, the plaintiff shall be entitled to recover reasonable attorney's fees and expenses of litigation

---

[17] (Emphasis supplied).

[18] *See* OCGA § 9-11-68 (c) ("An offer that is neither withdrawn nor accepted within 30 days shall be deemed rejected.").

10

incurred by the plaintiff or on the plaintiff's behalf *from the date of the rejection of the offer of settlement through the entry of judgment.*[19]

In applying the plain and unambiguous requirements of subsection (b) (2), the trial court properly found that Harris was eligible to recover attorney fees and litigation costs because the jury awarded him $35,000 in damages, which was more than 125 percent of his pretrial counteroffer to settle the case for $22,000.[20]

But as set forth *supra*, subsection (b) (2) also provides that a plaintiff who is awarded the requisite amount of damages may only recover attorney fees and litigation expenses "from the date of the rejection of the offer of settlement through the entry of judgment."[21] Thus, Harris is only entitled to recover attorney fees and litigation expenses that he incurred between October 11, 2015, when his counteroffer was deemed rejected (30 days after it was made), until November 1, 2015, when the trial court entered its final judgment. And because Harris failed to show that he

---

[19] (Emphasis supplied).

[20] Mahone does not dispute that 125 percent of Harris's counteroffer is $27,500.

[21] OCGA § 9-11-68 (b) (2).

incurred any such fees and expenses during that time, the trial court did not err in denying Harris an award of attorney fees under OCGA § 9-11-68.[22]

Nevertheless, despite the trial court's application of the clear and unambiguous terms of the statute,[23] Harris argues that the trial court erred in construing OCGA § 9-11-68 in such a way that "creat[ed] the possibility of an absurd result." Specifically, he contends that it is absurd and untenable for a counteroffer that is made at least 20 days before the trial's conclusion, as allowed by subsection (a), to remain open for

---

[22] *See Georgia Dep't of Corr. v. Couch*, 295 Ga. 469, 483-84 (3) (a) (759 SE2d 804) (2014) ("A naked assertion that the fees are 'reasonable,' without any evidence of hours, rates, or other indication of the value of the professional services actually rendered is inadequate."); *Hughes v. Great S. Midway, Inc.*, 265 Ga. 94, 95 (1) (454 SE2d 130) (1995) (holding that the trial court erred in awarding attorney fees when the party requesting those fees "failed to prove the actual costs of the attorney and the reasonableness of those costs" (punctuation omitted)); *Sims v. G.T. Architecture Contractors Corp.*, 292 Ga. App. 94, 96 (1) (663 SE2d 797) (2008) ("[A]n award of attorney fees cannot stand [when] the plaintiff fails to prove the actual costs of his attorneys and the reasonableness of those costs."); *Daniel v. Smith*, 266 Ga. App. 637, 640 (2) (597 SE2d 432) (2004) ("An award of attorney fees is unauthorized if [the plaintiff] failed to prove the actual costs of his attorneys and the reasonableness of those costs." (punctuation omitted))

[23] *See Chase*, 285 Ga. at 695 (2) ("[When] the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. In fact, [when] the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden." (punctuation omitted); *Hough v. State*, 279 Ga. 711, 716 (2) (a) (620 SE2d 380) (2005) (same); *Abdulkadir v. State*, 279 Ga. 122, 123 (2) (610 SE2d 50) (2005) (same).

12

30 days under subsection (c) in cases in which the 30-day period does not expire until after the jury has rendered its verdict. Under such circumstances, Harris claims that "a defendant could, as in this case, fail to accept a counteroffer that was a mere $7,000 more than his own offer, proceed to trial, be held liable by the jury for $35,000, then accept the [lower] offer that had been made prior to trial."[24] According to Harris, the General Assembly "could not possibly have contemplated" such a result. But merely because an outcome is unfavorable to a prevailing plaintiff does not in and of itself render it absurd or untenable.

Harris is correct, of course, that "courts must construe statutes in a way that square[s] with common sense and sound reasoning."[25] Furthermore, it is the duty of

---

[24] Although Harris repeatedly cites a defendant's post-trial acceptance of a pretrial counteroffer following an unfavorable jury verdict as an absurd outcome, we note that such a scenario did not occur in this case. Instead, Mahone remains bound by the jury's verdict because he did not accept Harris's counteroffer before it was deemed rejected on October 11, 2015. But even if Mahone had accepted Harris's counteroffer after the trial, it would in no way change our analysis of the relevant statutory subsections. To the extent that the outcome in this case can possibly be characterized as "bizarre," this is so only because of Harris's own choices.

[25] *Palmyra Park Hosp., Inc. v. Phoebe Sumter Med. Ctr.*, 310 Ga. App. 487, 491 (1) (714 SE2d 71) (2011) (punctuation omitted); *accord Staley v. State*, 284 Ga. 873, 874 (1) (672 SE2d 615) (2009); *State v. Mulkey*, 252 Ga. 201, 204 (2) (312 SE2d 601) (1984); *see Muscogee Cty. Bd. of Tax Assessors v. Pace Indus., Inc.*, 307 Ga. App. 532, 535 (705 SE2d 678) (2011) ("Our interpretation of [a] statute must square with common sense and sound reasoning." (punctuation omitted)).

13

the court to "consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature."[26] But we reiterate that when the language of a statute is "plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly."[27] This is because under our "system of separation of powers this Court does not have the authority to rewrite statutes."[28] Indeed, the doctrine of separation of powers is "an immutable constitutional principle which must be strictly enforced[,] [and] [u]nder that doctrine, statutory construction

---

[26] *Palmyra Park Hosp., Inc.*, 310 Ga. App. at 491 (1) (punctuation omitted); *accord Staley*, 284 Ga. at 873-74 (1); *but see* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 239 (1st ed. 2012) ("The doctrine of absurdity is meant to correct obviously *unintended* dispositions, not to revise purposeful dispositions that, in light of other provisions of the applicable code, make little if any sense").

[27] *Chase*, 285 Ga. at 695 (2); *see supra* note 12 & accompanying text.

[28] *Allen v. Wright*, 282 Ga. 9, 12 (1) (644 SE2d 814) (2007) (punctuation omitted); *accord Colon v. Fulton Cty.*, 294 Ga. 93, 97 (2) (751 SE2d 307) (2013); *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006); *see West v. State*, 300 Ga. 39, 44 (793 SE2d 57) (2016) ("While this Court has the authority to narrow a statute to avoid unconstitutional infirmities under our system of separation of powers , this Court does not have the authority to rewrite statutes." (punctuation omitted)).

14

belongs to the courts, legislation to the legislature."[29] Thus, we cannot and will not "add a line to the law."[30] And as to attorney-fee statutes specifically, we have repeatedly explained that because "any statute that provides for the award of attorney fees is in derogation of common law, it must be strictly construed *against* the award of such damages."[31] In other words, such statutes, including OCGA § 9-11-68, "must be *limited strictly to the meaning of the language employed*, and not extended beyond the plain and explicit terms of the statute."[32]

---

[29] *Allen*, 282 Ga. at 12 (1) (punctuation omitted); *accord Mason v. Home Depot U.S.A., Inc.*, 283 Ga. 271, 276 (3) (658 SE2d 603) (2008); *Turner v. Georgia River Network*, 297 Ga. 306, 308-09 (773 SE2d 706) (2015); *Fielden*, 280 Ga. at 448.

[30] *Allen*, 282 Ga. at 12 (1) (punctuation omitted).

[31] *Horton*, 325 Ga. App. at 216 (punctuation omitted) (emphasis supplied); *accord Kemp*, 337 Ga. App. at 633; *Doster v. Bates*, 266 Ga. App. 194, 195 (1) (596 SE2d 699) (2004); *see Holland*, 292 Ga. at 337 ("A statute does not need to expressly say, 'this is intended to preempt the common law.' The actual canon of statutory construction is that statutes in derogation of the common law must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute." (punctuation omitted)); *Couch*, 291 Ga. at 364(1) (729 SE2d 378) (2012) (same).

[32] *Couch*, 291 Ga. at 364 (1) (punctuation omitted) (emphasis supplied); *accord Delta Airlines, Inc. v. Townsend*, 279 Ga. 511, 512 (1) (614 SE2d 745) (2005); *see Alessi v. Cornerstone Associates, Inc.*, 334 Ga. App. 490, 493 (780 SE2d 15) (2015) ("[B]ecause OCGA § 9-11-68 entitles one party to an award of attorney fees and costs, it is in derogation of common law and it must be strictly construed against the award of such damages." (punctuation omitted)).

15

In this case, Harris would have us depart from these well-established principles and construe OCGA § 9-11-68 differently to resolve his perceived (and self-imposed) conflict between subsections (a) and (c), which plainly require a counteroffer to remain open for 30 days when it is made less than 30 days prior to trial, or even as here, less than 30 days prior to the *conclusion* of trial. But although the trial court found that, in this particular case, the application of *both* subsections (a) and (c) yielded a "bizarre outcome" (*i.e.* that Harris's counteroffer remained open until three days *after* the jury rendered its verdict in his favor), it was one that occurred as a direct result of Harris's own conscious decision to allow his counteroffer to remain open past the time of trial.

Concededly, the application of OCGA § 9-11-68 (a) and (c) to the particular facts of this case appears to have produced an unusual outcome that presumably was unintended by Harris, the prevailing party at trial. But Harris ignores that, under OCGA § 9-11-68 (c), he could have easily avoided such adverse consequences by withdrawing his counteroffer in writing at any time prior to the trial's conclusion.[33] But for reasons unknown to this Court, Harris instead allowed his counteroffer to

---

[33] *See* OCGA § 9-11-68 (c) ("Any offer made under this Code section shall remain open for 30 days *unless sooner withdrawn by a writing* served on the offeree prior to acceptance by the offeree . . . ." (emphasis supplied)).

16

remain open for the entire 30-day period required by OCGA § 9-11-68 (c) and explicitly provided for as much in the counteroffer itself. And while Harris would not have been eligible to recover attorney fees under OCGA § 9-11-68 if he had withdrawn his counteroffer prior to the expiration of the 30-day time period,[34] doing so would have avoided the allegedly "absurd" result of allowing his pretrial counteroffer to remain open following a jury verdict that was more favorable to him.

Regardless, Harris has cited to no authority (and we find none) remotely suggesting that the absurdity doctrine should apply here. Indeed, as previously noted, the fact that Harris is unable to receive attorney fees under OCGA § 9-11-68 as a result of the purposeful manner in which he timed his counteroffer can hardly be characterized as absurd. It was poor timing on his part, and nothing more. Moreover, the fact that Mahone could have accepted Harris's counteroffer for an amount less than the jury's verdict is also not a result that is properly classified as an absurdity. It is hardly absurd or impractical for parties to enter into post-trial settlement agreements that reduce or alter the amount of damages awarded by the jury. To the contrary, under certain circumstances, such post-verdict settlements may even be

---

[34] *See id.* ("[A]n offeror shall not be entitled to attorney's fees and costs under subsection (b) of this Code section to the extent an offer is not open for at least 30 days (unless it is rejected during that 30 day period.")).

17

desirable to a prevailing plaintiff.[35] For example, a plaintiff may choose to settle with a tortfeasor defendant for a lesser amount than the jury's verdict to avoid a lengthy appeals process that could forestall collection of the judgment, or alternatively, a plaintiff may, to achieve some level of certainty in the outcome, desire a settlement in lieu of defending against post-trial motions.[36] This is true regardless of whether

---

[35] *See, e.g.*, *Med. Staffing Network, Inc. v. Connors*, 313 Ga. App. 645, 650-51 (3) (722 SE2d 370) (2012) (enforcing a settlement agreement entered into by the parties *after the jury's verdict*, but before the court's final judgment, which provided that the defendants would pay a certain portion of the damages award in full in exchange for the discharge of all claims against them that were, or might have been, the subject matter of the complaint); *U.S. Fid. & Guar. Co. v. Evans*, 116 Ga. App. 93, 94-96 (2) (156 SE2d 809) (1967) (holding that an insurance company acted in bad faith when it rejected a settlement offer within the policy limits *after a verdict* in excess of the policy limits and prior to appeal); *see also Tallent v. Liberty Mut. Ins. Co.*, No. 1997-1777H, 2005 WL 1239284, at *14 (1) n.9 (Mass. Super. 2005) (recognizing "the need to balance the *desirability of settlement post-verdict* with the danger of stifling the appellate process" (emphasis supplied)).

[36] *See R.W. Granger & Sons, Inc. v. J & S Insulation, Inc.*, 754 NE2d 668, 678 (2) (2001) ("If a losing party intends to take an appeal and to challenge the basis of the amount of a jury verdict, it may be reasonable to offer a compromised amount in settlement."); *Ziarko v. Soo Line R. Co.*, 641 NE2d 402, 411 (1994) ("There exist several reasons why a plaintiff would settle with a tortfeasor defendant for a lesser amount than the jury's verdict subsequent to a judgment, none of which point to collusion or fraud. At the time of the settlement, post-trial motions were pending; a viable explanation for plaintiff's settlement is that she anticipated a lengthy appeal process which might have forestalled collection of her judgment, providing an impetus for her to settle. A further reason for settlement while post-trial motions were pending could be plaintiff's desire to settle in order to achieve some measure of certainty." (punctuation omitted)).

18

Harris subjectively desired or intended for his counteroffer to lead to a post-verdict settlement lower than the jury's verdict. The bottom line is that he has provided us with no basis for concluding that such settlements are absurd, unrealistic, or even uncommon. And we reiterate that, although Harris's failure to withdraw his counteroffer did not actually result in his receiving less than the full amount of the jury's award, to the extent that such a result is *hypothetically* possible under OCGA § 9-11-68 in other cases, a plaintiff can avoid this potentially adverse result by acting in his or her own best interest and withdrawing the offer prior to its expiration.

Furthermore, each of Harris's proposed alternative constructions of OCGA § 9-11-68 requires this Court to ignore the plain and unambiguous language actually employed by the statute and construe it based on mere speculation as to what the General Assembly may or may not have intended. But again, that is precisely what courts are unauthorized to do.[37] For example, Harris suggests that we construe subsection (a)'s allowance for counteroffers to be made as late as 20 days before trial as an exception to subsection (c)'s requirement that all offers and counteroffers remain open for 30 days. But *nothing* in the plain language of OCGA § 9-11-68 (a) or (c) indicates that there are *any* exceptions to subsection (c)'s express requirement

---

[37] *See supra* notes 27 through 31 and accompanying text.

that all offers made under the statute remain open for at least 30 days unless it is sooner withdrawn or rejected in writing.[38] In fact, subsection (c) plainly provides that an offer or counteroffer remaining open for 30 days (unless it is rejected during that time) is a *prerequisite* to the recovery of attorney fees and litigation expenses.[39]

Harris further contends that this Court should construe Mahone's written jury instructions as a formal rejection of his counteroffer. This argument is a nonstarter. Harris identifies no language in Mahone's proposed jury instructions that even references his counteroffer, much less suggests any textual basis to reject it. Moreover, unlike proposed jury instructions, OCGA § 9-11-68 (a) provides that written offers (and presumably any responsive writings pertaining thereto) "shall *not*

---

[38] *See* OCGA § 9-11-68 (c) ("*Any offer* made under this Code section *shall remain open for 30 days* unless sooner withdrawn by a writing served on the offeree prior to acceptance by the offeree, but an offeror shall not be entitled to attorney's fees and costs under subsection (b) of this Code section to the extent an offer is not open for at least 30 days (unless it is rejected during that 30 day period)." (emphasis supplied)).

[39] *See id.* ("[A]n offeror shall not be entitled to attorney's fees and costs under subsection (b) of this Code section to the extent an offer is not open for at least 30 days (unless it is rejected during that 30 day period).").

[be] file[d] with the court."[40] Instead, under OCGA § 9-11-68 (c), "[a]cceptance or rejection of the offer by the offeree must be *in writing* and *served upon the offeror*."[41]

Harris also asserts that the trial court's construction of OCGA § 9-11-68 is erroneous because it "completely reads out of the statute the 20-day time period [allowed] for counteroffers under subsection (a)." Again, we disagree. Subsection (a) operates to allow counteroffers, unlike initial offers, to be made as late as 20 days prior to trial, and nothing in the trial court's application of the statute requires counteroffers to be made any earlier. As explained in detail *supra*, the trial court merely applied the plain language of the statute in determining that *if* a plaintiff *chooses* to make a counteroffer less than 30 days prior to trial as allowed by subsection (a), the counteroffer must nevertheless remain open for 30 days unless rejected or withdrawn in writing as required by subsection (c). Conversely, the actual elimination of subsection (a)'s 20-day time period for counteroffers would mean that all offers, including counteroffers, must be made at least 30 days prior to trial. The trial court's application of OCGA § 9-11-68 resulted in no such requirement.

_____

[40] (Emphasis supplied).

[41] (Emphasis supplied).

Finally, Harris argues that the trial court's construction of OCGA § 9-11-68 contravenes the General Assembly's stated "purpose" for the statute, which is to encourage settlements and avoid unnecessary litigation. And given this overarching purpose, Harris contends that Mahone's decision to proceed to trial should be deemed a rejection of the counteroffer.

Without question, as recognized by the Supreme Court of Georgia, the "clear purpose of the statute is to encourage litigants in tort cases to make and accept good faith settlement proposals in order to avoid unnecessary litigation, thereby advancing this State's strong public policy of encouraging negotiations and settlements."[42] But the commendable policy, as reflected throughout the text of OCGA § 9-11-68, cannot be used as an excuse to negate Harris's purposeful decision to allow his counteroffer to remain open past the time of trial. Furthermore, to the extent that a party chooses to allow his or her offer to remain open beyond the time of trial (either by mistake or for some other reason), this decision cannot be said to run afoul of the State's policy of encouraging negotiations and settlements. Indeed, post-trial settlement agreements are consistent with this stated purpose, as they can avoid the lengthy appellate process

---

[42] *Couch*, 295 Ga. at 471 (1) (b) (punctuation omitted); *accord Tiller v. RJJB Associates, LLP*, 331 Ga. App. 622, 627 (1) (c) (770 SE2d 883) (2015).

and related delays in collecting a judgement, as well as provide certainty to the parties and finality to the litigation.[43] And as to Harris's proposed solution of inferring that, under OCGA § 9-11-68, a defendant rejects a pending counteroffer by proceeding to trial, we stress that subsection (c) provides for only three ways in which a plaintiff's counteroffer expires: (1) withdrawal by the plaintiff in writing, (2) rejection by the defendant in writing, or (3) the expiration of 30 days.[44] To accept Harris's proposed construction would add a fourth and impermissibly extratextual method for a counteroffer to expire or be deemed rejected (*i.e.* when trial commences). Suffice it to say, we are not at liberty to read additional provisions into unambiguous statutes with clear terms such as the one before us.[45]

In sum, we emphasize that when judges

start discussing not the meaning of the statutes the legislature actually enacted, as determined from the text of those laws, but rather the unexpressed 'spirit' or 'reason' of the legislation, and the need to make

---

[43] *See supra* notes 35 and 36.

[44] *See generally* OCGA § 9-11-68 (c).

[45] *See supra* notes 28 through 30 and accompanying text; *see also Chase*, 285 Ga. at 695 (2) ("Georgia law provides that the express mention of one thing in an act or statute implies the exclusion of all other things."); *Allen*, 282 Ga. at 14 (3) (same).

23

sure the law does not cause 'unreasonable consequences,' we venture into dangerously undemocratic, unfair, and impractical territory.[46]

Given the foregoing, the trial court properly found that under the plain language of OCGA § 9-11-68, Harris's pretrial counteroffer remained open for 30 days until it was deemed rejected following trial on October 11, 2015. And because OCGA § 9-11-68 (b) (2) only allows for attorney fees and litigation costs incurred from the date of rejection until the date of the final judgment, Harris was not entitled to a fee award under this statute, as he did not incur any attorney fees during that time period. To the extent that this straightforward application of the relevant statutory subsections to the facts of this case produces a "bizarre result," it is one of Harris's own making.

2. Next, Harris argues that the trial court erred by denying his motion for fees under OCGA § 9-15-14 (a) and (b) based on an erroneous factual finding that his counsel failed to testify as to the amount of reasonable and necessary fees that Harris incurred litigating the allegedly frivolous issue. We agree, and therefore, reverse the trial court's denial of Harris's motion for attorney fees under OCGA § 9-15-14 and remand the case for further consideration.

---

[46] *Merritt v. State*, 286 Ga. 650, 656 (690 SE2d 835) (2010) (Nahmias, J., concurring specially).

At the outset, we note that this Court reviews a trial court's ruling on "a motion for attorney fees and litigation expenses under OCGA § 9-15-14 (a) using the 'any evidence' standard, and one based on OCGA § 9-15-14 (b) for an 'abuse of discretion.'"[47] And as summarized by this Court,

> [a]n award under OCGA § 9-15-14 (a) is mandated when a party has asserted a defense with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted defense.
>
> An award under OCGA § 9-15-14 (b) is permitted when a party's defense of an action 'lacked substantial justification'; was 'substantially frivolous, substantially groundless, or substantially vexatious'; when the defense 'was interposed for delay or harassment,' or when a party 'unnecessarily expanded the proceeding by other improper conduct.'[48]

But importantly, in cases involving OCGA § 9-15-14 (a) or (b), the trial court "must limit the fee[ ] award to those fees incurred because of the sanctionable conduct."[49]

---

[47] *Unifund CCR Partners v. Mehrlander*, 309 Ga. App. 685, 686 (710 SE2d 882) (2011).

[48] *Fulton Cty. Sch. Dist. v. Hersh*, 320 Ga. App. 808, 814 (2) (740 SE2d 760) (2013) (punctuation and citations omitted); *see* OCGA § 9-15-14 (a), (b).

[49] *Roylston v. Bank of Am., N.A.*, 290 Ga. App. 556, 562-63 (2) (a) (660 SE2d 412) (2008) (punctuation omitted).

Here, Harris moved for attorney fees and costs of litigation under both of the foregoing subsections of OCGA § 9-15-14. Specifically, Harris argued that he was entitled to the attorney fees he incurred for responding to and moving to strike Mahone's use of inadmissible hearsay as to his counsel's alleged conversations with jurors. According to Harris, such a fee award was mandatory under subsection (a) because Mahone's arguments based on unsworn juror testimony were "completely absent of any justiciable issue of law or fact." Similarly, Harris contended that the trial court had the discretion to award him attorney fees under subsection (b) because there was no substantial justification for using juror hearsay to defend against his motion for fees under OCGA § 9-11-68.

But the trial court, assuming without deciding that those arguments had merit, denied Harris's motion *solely* because his counsel testified that "he had incurred $1,500 in fees for post-trial motions, but [counsel] did not delineate between the time spent on statutory interpretation [of OCGA § 9-11-68] and juror[-]testimony arguments." However, as Harris explains on appeal, the foregoing factual finding is belied by the record. Indeed, after specifically arguing that Mahone's reliance on juror hearsay was frivolous and without substantial justification, Harris's counsel concluded by saying, "[a]nd I will state in my place that my fees dealing with that

26

issue which are, you know, after the trial were approximately five hours, and at our reasonable hourly rates that would be approximately [$1,500] in fees *dealing with that hearsay issue*."[50] Thus, contrary to the trial court's findings, Harris's counsel testified to the number of hours he spent working on the juror-hearsay issue, as well as the amount of fees that Harris incurred litigating that particular issue, and he represented to the court that those fees were based on a reasonable hourly rate.[51] Because the trial court denied Harris's motion for attorney fees under OCGA § 9-15-14 based solely on an erroneous factual finding as to counsel's testimony, we reverse

---

[50] (Emphasis supplied). *See Rank v. Rank*, 287 Ga. 147, 149 (2) (695 SE2d 13) (2010) ("Attorneys are officers of the court, and their statements in their place, if not objected to, serve the same function as evidence. In the absence of an objection, counsel's evidentiary proffers to the trial court during a hearing will be treated on appeal as the equivalent of evidence." (punctuation omitted) (citation omitted)).

[51] *See Jones v. Unified Gov't of Athens-Clarke Cty*., 312 Ga. App. 214, 221(2) (c) (718 SE2d 74) (2011) ("In order to recover attorney fees, a prevailing party must prove both their actual cost and their reasonableness. It is well-settled that a party's attorney himself is competent to testify as to his opinion on reasonable fees." (punctuation and footnote omitted)); *Santora v. Am. Combustion, Inc*., 225 Ga. App. 771, 776 (3) (485 SE2d 34) (1997) ("Because counsel's testimony was competent to show the reasonableness of the billings, [the appellee] met its burden of proof as to the attorney fees."). *Cf. Duncan v. Cropsey*, 210 Ga. App. 814, 815-16 (2) (437 SE2d 787) (1993) (reversing an award of attorney fees under OCGA § 9-15-14 when counsel did not set forth the amount of hours that he expended on the case, did not state the number of hours that were attributable to the sanctionable conduct, and did not state that the requested amount of fees was reasonable).

the court's denial of the motion and remand the case for the trial court to reconsider whether, in light of the evidence presented, an award of fees is warranted under OCGA § 9-15-14.

For all of the foregoing reasons, we affirm the trial court's denial of Harris's motion for fees under OCGA § 9-11-68, but we reverse the court's denial of Harris's motion for fees under OCGA § 9-15-14 and remand the case with direction.

*Judgment affirmed in part, reversed in part, and case remanded with direction. Reese and Bethel, JJ., concur.*