**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 30, 2013**

# In the Court of Appeals of Georgia

A13A1123. KAUFMAN DEVELOPMENT PARTNERS, L. P. v.
    EICHENBLATT.

MCFADDEN, Judge.

This appeal follows a trial in a business dispute in which the jury awarded David Eichenblatt compensatory damages on his claim against Kaufman Development Partners, L. P. ("Kaufman Development") for breach of the operating agreement for Piedmont/Maple, L. L. C. ("Piedmont/Maple"), a limited liability company "formed to acquire, own, operate, redevelop, lease, and sell or otherwise dispose of certain" real estate. Kaufman Development enumerates as error the trial court's summary judgment ruling that Eichenblatt had standing to bring the contract action against it and the trial court's post-trial ruling refusing to amend its judgment to extinguish Eichenblatt's interest in Piedmont/Maple. As detailed below, we find

that Eichenblatt, as a party to the operating agreement, had standing to bring an action for the breach of that contract. We also find that the trial court properly declined to amend or clarify its judgment, which was consistent with the jury's verdict. Finally, we construe Kaufman Development's challenge to the trial court's denial of its motion for judgment notwithstanding the verdict as a prayer for relief rather than an additional argument. Accordingly, we affirm.

1. *Facts and proceedings below.*

On October 23, 1995, Eichenblatt and Kaufman Development entered into an operating agreement for Piedmont/Maple. Craig Kaufman ("Kaufman") signed that agreement on Kaufman Development's behalf. The operating agreement identified Eichenblatt and Kaufman Development as the "Members" of Piedmont/Maple and set forth the operating agreement's purpose: "to document how the business and affairs of [Piedmont/Maple] shall be conducted." Therein, Eichenblatt and Kaufman Development agreed to terms governing, among other things, Piedmont/Maple's membership and management; the withdrawal, removal or transfer of a member's interest in Piedmont/Maple; the allocation of profits and losses; the distribution of cash flow; the dissolution of Piedmont/Maple; the distribution of proceeds upon dissolution; and accounting and recordkeeping. The operating agreement entitled

2

Eichenblatt to up to 40 percent of Piedmont/Maple's quarterly cash flow distributions, depending on the circumstances.

Subsequently, Eichenblatt entered into a "Separation Agreement" with Kaufman and three other corporations in which the two men were 50 percent shareholders. That agreement, which was effective January 1, 2000, stated that the two men had "mutually agreed to cease doing business together, except for their continued joint ownership in certain entities defined herein." Regarding Piedmont/Maple, the separation agreement stated that Eichenblatt and Kaufman would modify the operating agreement to remove Eichenblatt as a member of Piedmont/Maple effective December 31, 1999, in accordance with a specific section of the operating agreement under which Eichenblatt would "continue to have the right to receive such share of allocations and distributions to which he would otherwise be entitled, but shall have no other powers, rights or privileges of a Member of Piedmont[/]Maple."

Accordingly, on January 1, 2000, Eichenblatt and Kaufman Development amended the operating agreement to address Eichenblatt's removal as a member of Piedmont/Maple. Pertinently, the amendment provided:

3

The parties hereto hereby agree that such removal of Eichenblatt as a Member shall be effective as of the Effective Date [January 1, 2000]. Pursuant to Section 3.1 of the Operating Agreement, Eichenblatt shall have the right to receive such share of allocations and distributions to which he would otherwise be entitled, but shall have no other powers, rights or privileges of a Member of [Piedmont/Maple]. The parties hereto agree that from and after the Effective Date, Eichenblatt shall have no authority to bind [Piedmont/Maple] as a Member and shall have no vote in any matter requiring the approval of the Members either pursuant to the Operating Agreement or in the [Georgia Limited Liability Company] Act except as otherwise provided herein. Notwithstanding the foregoing, Eichenblatt's consent shall be required to approve any amendment of the Operating Agreement which would reduce the amount that would be paid or distributed to Eichenblatt.

The amendment addressed Eichenblatt's access to Piedmont/Maple's records and his entitlement to continue to receive certain fees. It added a new paragraph to the section of the operating agreement governing the management of Piedmont/Maple that specifically addressed transactions between Piedmont/Maple, its members, and entities affiliated with its members. The amendment provided that it "shall be binding upon and inure to the benefit of the parties hereto[.]" And it provided that, "[e]xcept as expressly modified hereby, the Operating Agreement shall remain in full force and effect."

Subsequently, Eichenblatt brought the instant action against Kaufman, Kaufman Development, and several entities related to Kaufman. He alleged, among other things, that Kaufman Development had breached the operating agreement by failing to comply with certain of its provisions governing the management and dissolution of Piedmont/Maple, which he claimed led to him receiving diminished allocations and distributions under the operating agreement. The trial court denied the parties' cross-motions for summary judgment. The case went to trial, and the jury returned a verdict awarding Eichenblatt $625,000 in compensatory damages against Kaufman Development for breach of the operating agreement. (The jury also found that Craig Kaufman breached the separation agreement but awarded Eichenblatt no damages for this breach, and it found in the defendants' favor on all of the other claims in Eichenblatt's complaint. ) After the trial court entered judgment on the jury verdict, Kaufman Development moved for the trial court to amend or clarify its judgment to include a finding that Eichenblatt's interest in Piedmont/Maple had been extinguished. Alternatively, Kaufman Development moved for a judgment notwithstanding the jury verdict. The trial court denied both motions.

2. *Eichenblatt's standing to bring the contract action.*

5

Kaufman Development argues that the trial court erred in ruling that Eichenblatt had standing to sue it for breach of the operating agreement. Kaufman Development raised this issue in connection with the cross-motions for summary judgment. In denying summary judgment, the trial court determined that Eichenblatt had standing to bring the action against Kaufman Development because he was a party to the amended operating agreement with rights thereunder that he claimed had been infringed upon by Kaufman Development's breach. The issue of standing was not presented to the jury.

> Generally, a ruling on a motion for summary judgment becomes moot following the verdict and judgment. However, a party may appeal the denial of summary judgment as part of the direct appeal from the final judgment if the legal issues raised and resolved in denying the motion for summary judgment were not considered at trial. Thus, because the issue of [Eichenblatt's standing to sue for breach of the operating agreement] was not presented to the jury, we will review the trial court's denial of the motion for summary judgment on this ground.

*Smith v. Saulsbury*, 286 Ga. App. 322, 323 (1) (a) (649 SE2d 344) (2007) (citations and punctuation omitted).

Ordinarily, the parties to a contract have standing to sue for a breach of that contract. See generally OCGA § 9-2-20 (a) ("[a]s a general rule, an action on a

6

contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested"); *Level One Contact v. BJL Enterprises*, 305 Ga. App. 78, 80 (1) (a) (699 SE2d 89) (2010) ("The doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it.") (citation omitted). Kaufman Development asserts, without citation to authority, that Eichenblatt "is no longer a party to [the] [o]perating [a]greement" because he is no longer a member of Piedmont/Maple. The clear and unambiguous language of the operating agreement and amendment thereto shows otherwise. See *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 30 (3) (293 SE2d 381) (2013) (where contract's language is clear and unambiguous, court must look to contract alone for its meaning and enforce it according to those clear terms).

Both the operating agreement and the amendment state that the parties are Eichenblatt and Kaufman Development, and Eichenblatt signed both as a party. The amendment provides that the operating agreement would remain in full force and effect except as expressly modified by the amendment. By expressly removing Eichenblatt as a *member* of Piedmont/Maple, the amendment modifies the operating agreement to exclude Eichenblatt from the term "Member" as that term is used in the operating agreement. But this does not affect Eichenblatt's identity as a *party* to the

7

operating agreement. The amendment does not substitute another party for Eichenblatt or otherwise change the identity of the parties to the operating agreement, and Eichenblatt remains a party thereto.

Kaufman Development argues that, because Eichenblatt is no longer a member of Piedmont/Maple, he cannot bring a claim for Kaufman Development's breach of provisions of the operating agreement other than those governing allocations and distributions. We disagree. Again, the amendment unambiguously provides that the operating agreement remains in full force and effect except as expressly modified by the amendment. Its provision that Eichenblatt no longer would have "powers, rights or privileges of a Member of [Piedmont/Maple]," aside from his rights to allocations and distributions, merely prevents Eichenblatt from claiming other rights reserved for Piedmont/Maple's members. Neither the operating agreement nor the amendment contains language suggesting that the parties intended that standing to enforce their agreement was a "power, right or privilege" limited only to Piedmont/Maple's members. Moreover, to construe the operating agreement and amendment in this manner would be inconsistent with at least two of the amendment's provisions – the provision adding to the operating agreement a new section pertaining to Piedmont/Maple's management and the provision stating that the amendment "shall

8

be binding upon and inure to the benefit of the parties hereto [Kaufman Development and Eichenblatt]." These provisions make clear that Kaufman Development remains bound by and Eichenblatt continues to benefit from terms other than those specifically related to Eichenblatt's rights to allocations and distributions.

3. *Motion to amend or clarify the judgment.*

Kaufman Development argues that the trial court erred in denying its motion to amend or clarify the judgment. The judgment was consistent in every respect with the jury's responses on the special verdict form – a form to which Kaufman Development did not object. Nevertheless, Kaufman Development argues that the trial court should have added to its judgment a ruling that the jury's award extinguished Eichenblatt's ownership interest in Piedmont/Maple. We find no error.

"Judgment and execution shall conform to the verdict," OCGA § 9-12-9, and "[a] judgment may be amended by order of the court to conform to the verdict upon which it is predicated, even after an execution issues." OCGA § 9-12-14. The judgment "must conform to the reasonable intendment of the verdict upon which it is based," as determined by "an inspection of the record, including the verdict and pleadings." *Turley v. Turley*, 244 Ga. 808, 809 (262 SE2d 112) (1979) (citations omitted). Consequently, the trial court was required "to examine the record . . . and

determine if it . . . plainly appear[ed] upon the face of the record . . . whether the jury intended [to extinguish Eichenblatt's interest]." Id. (footnote and punctuation omitted).

Kaufman Development argues that the jury's award represented the liquidated value of Eichenblatt's interest and, consequently, the extinguishment of that interest was the only logical legal conclusion to be drawn from the verdict. See *Norton Realty & Loan Co. v. Bd. of Ed. of Hall County*, 129 Ga. App. 668, 673 (3) (200 SE2d 461) (1973) (court has power to amend judgment and execution to conform to legal effect of verdict). But it does not plainly appear from the face of the record in this case that the jury intended to make any decision regarding Eichenblatt's interest in Piedmont/Maple. Although Eichenblatt's counsel argued at trial that the jury should "compensate [Eichenblatt] for his interest," after which Kaufman Development could "have 100 percent interest," neither the special verdict form nor the trial court's charge to the jury asked the jury to make any determinations specifically related to Eichenblatt's interest in Piedmont/Maple. Notably, the jury awarded Eichenblatt an amount significantly less than what his counsel argued was the value of his interest.

Consequently, while it is plain from the record that the jury intended to award Eichenblatt $625,000 for breach of the Piedmont/Maple operating agreement, it is not

10

at all plain that the jury intended either for this amount to represent the full value of Eichenblatt's ownership interest in Piedmont/Maple or for Eichenblatt to have no interest in Piedmont/Maple going forward. See *Salvador v. Coppinger*, 198 Ga. App. 386, 387-388 (1) (a) (401 SE2d 590) (1991) (the fact that the jury in a personal injury case awarded exactly the amount of medical expenses claimed by the plaintiff did not establish that the jury did not include therein an award for pain and suffering; the jury might have reduced the sum claimed by the plaintiff for special damages, and there was "no way to determine the weighing and analysis engaged in by the jurors"). Compare *Blevins v. Brown*, 267 Ga. App. 665, 668 (2) (600 SE2d 739) (2004) (where the jury clearly awarded a truck to one party in a divorce action, but the other party had unlawfully converted the truck, the trial court did not err in entering a judgment that instead awarded damages for the unlawful conversion, because the judgment conformed with the reasonable intendment of verdict). Considering the record in this case, the trial court's judgment was consistent with all the jury's findings on the special verdict form and did not require amendment or clarification.

Although Kaufman Development contends that it did not ask the trial court to amend the *verdict*, that is what Kaufman Development is asking – for the trial court to add to the verdict a new determination, extinguishing Eichenblatt's interest in

Piedmont/Maple, and then for the trial court to conform its judgment to that amended verdict. But "once the jury has dispersed, the trial judge has no power either to add to or take from [the jury's] findings. . . ." *Gill Plumbing Co. v. Jimenez*, 310 Ga. App. 863, 867 (1) (714 SE2d 342) (2011) (citation and punctuation omitted). See OCGA § 9-12-7 ("after a verdict has been received and recorded and the jury has dispersed, it may not be amended in matter of substance either by what the jurors say they intended to find or otherwise"); see also *Blevins*, 267 Ga. App. at 667 (1). Accordingly, a trial court may not amend a jury verdict in a matter of substance after the jury has dispersed even when "[i]t is clear that the jury's verdict did not fully conform to the law," *Force v. McGeachy*, 186 Ga. App. 781, 783-784 (1) (368 SE2d 777) (1988), or the trial court otherwise is not satisfied that the verdict was proper. See *Parrish Bakeries of Georgia v. Wiseman Baking Co.*, 104 Ga. App. 573, 575 (122 SE2d 260) (1961).

As detailed above, the jury was not asked to make, and did not make, any findings about Eichenblatt's interest, and Kaufman Development cannot now, through a post-trial motion after the jury dispersed, "rewrite the jury's verdict to include [such] finding[s]." *Quantum Trading Corp. v. Forum Realty Corp.*, 278 Ga. App. 485, 489 (1) (629 SE2d 420) (2006) (citing OCGA § 9-12-7). Cf. *Thacker*

12

*Constr. Co. v. A Betterway Rent-a-Car*, 186 Ga. App. 660, 662-663 (368 SE2d 178) (1998) (where an issue raised by the pleadings was not decided by the trier of fact – in that case, a panel of arbitrators – the trial court erred in entering a judgment that presupposed a finding on that undecided issue); *Dismuke v. Gibson*, 174 Ga. App. 546, 547 (2) (330 SE2d 771) (1985) (the trial court lacked authority to add interest to a judgment without direction to do so in the verdict). Kaufman Development's motion to amend the judgment simply was not the proper vehicle to address its arguments that Eichenblatt no longer has an interest in Piedmont/Maple and is estopped from asserting such an interest.

4. *Motion for judgment notwithstanding the verdict.*

Although, at the conclusion of its appellate brief, Kaufman Development states that we "should reverse the rulings of the trial court on [its] Motion to Clarify, or in the alternative, on [its] motion for a JNOV," it does not specifically enumerate as error the trial court's denial of the motion for judgment notwithstanding the verdict. See *American Mgmt. Svcs. East v. Fort Benning Family Communities*, 318 Ga. App. 827, 830 (2) (734 SE2d 833) (2012) (appellant cannot expand its enumerations of error through argument or citation in its brief). We therefore construe Kaufman

Development's reference to its motion for judgment notwithstanding the verdict as a prayer for relief rather than an additional argument.

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*