**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 14, 2017**

# In the Court of Appeals of Georgia

A17A1205. EICHENBLATT v. PIEDMONT/MAPLE, LLC et al.

ANDREWS, Judge.

In 1995, David L. Eichenblatt and Kaufman Development Partners, L.P. ("KDP") formed Piedmont/Maple, LLC, a real estate investment company that owned and operated commercial real estate located between Piedmont Road and Maple Drive in Atlanta. Following the sale of its final asset in November 2013, Piedmont/Maple sought to distribute its proceeds and dissolve. A dispute arose regarding the amount of money owed Eichenblatt, and, on October 27, 2014, KDP, Craig S. Kaufman (KDP's general partner), and Piedmont/Maple (collectively, "plaintiffs") sued Eichenblatt for a declaratory judgment regarding proper asset distribution. Eichenblatt counterclaimed for breach of contract, breach of fiduciary duty, and attorney fees. The trial court subsequently granted the plaintiffs partial

summary judgment on the counterclaims. Eichenblatt appeals, and for reasons that follow, we reverse the grant of partial summary judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant. See *Humphrey v. JP Morgan Chase Bank*, 337 Ga. App. 331 (1) (787 SE2d 303) (2016).

So viewed, the record shows that this is the second time the parties' business dispute has been before us. See *Kaufman Dev. Partners v. Eichenblatt*, 324 Ga. App. 71 (749 SE2d 374) (2013). As described in our previous opinion, Eichenblatt and KDP entered into an operating agreement in 1995 that governed Piedmont/Maple's operation and management. The agreement identified Eichenblatt and KDP as members, set forth management guidelines, and provided that Eichenblatt would receive up to 40 percent of Piedmont/Maple's quarterly cash flow distributions. Id. at 72.

2

At some point, the parties' business relationship changed, and Eichenblatt was removed as a Piedmont/Maple member via a January 1, 2000 amendment to the operating agreement. Id. Pursuant to that amendment, Eichenblatt retained "the right to receive such share of allocations and distributions to which he would otherwise [have been] entitled, but [had] no other powers, rights or privileges of a Member of the Company." Management of Piedmont/Maple fell to KDP, the only remaining member.

In 2005, KDP refinanced the debt on the Piedmont/Maple holdings, taking out separate loans on the parcels of property fronting Piedmont Road and Maple Drive. In the process, it placed ownership of the property into two single-asset subsidiaries: Piedmont Road, LLC, which owned the Piedmont Road property, and Maple Drive, LLC, which owned the Maple Drive property.

The real estate venture ultimately experienced financial difficulties, and Eichenblatt suspected mismanagement by KDP. He sued Kaufman, KDP, and several related entities, alleging, among other things, that KDP and Kaufman had mismanaged Piedmont/Maple, breached the amended operating agreement, and ignored their fiduciary responsibilities. The case proceeded to trial in September 2011. The jury awarded Eichenblatt $625,000 against KDP for breach of contract, and

3

we affirmed the resulting judgment. See id. We also rejected KDP's claim that the $625,000 award extinguished Eichenblatt's interest in Piedmont/Maple. Id. at 76 (3). As we explained, nothing in the verdict indicated that "the jury intended either for this amount to represent the full value of Eichenblatt's ownership interest in Piedmont/Maple or for Eichenblatt to have no interest in Piedmont/Maple going forward." Id. at 76 (3).

The venture continued after the trial, and in September 2012, KDP loaned Piedmont/Maple $3,550,000, which allowed Piedmont/Maple to pay off outstanding debt on the Maple Road property that had gone into default. This member loan and the associated promissory note carried a greater principal balance than the original indebtedness and a 15 percent interest rate, rather than the 5.61 percent rate associated with the original loan. The note also obligated Piedmont/Maple to pay fees to KDP and a Kaufman-related real estate entity.

Approximately two months before the member loan and promissory note were issued, Maple Drive, LLC, entered into a contract to sell the Maple Drive property for $5,500,000. The sale closed in April 2013, and the proceeds were used to extinguish the promissory note, interest, and fees owed to KDP on the Maple Drive property. In November 2013, Piedmont Road, LLC, sold the Piedmont Road property for

$5,525,000. Following that sale, the plaintiffs sought to wind down and terminate Piedmont/Maple. As part of the dissolution, Piedmont/Maple distributed to Eichenblatt $969,609.23, which it had determined to be 40 percent of its total remaining assets, less certain fees and expenses. Eichenblatt, however, disputed the accuracy of Piedmont/Maple's calculation and refused to cash the distribution checks.

The plaintiffs subsequently filed this declaratory judgment action to establish the proper dissolution payment. Eichenblatt counterclaimed for breach of contract and breach of fiduciary duty, asserting that KDP and Kaufman had manipulated the Maple Drive member loan to KDP's advantage and had reduced the value of the Piedmont/Maple property by selling the Piedmont Road and Maple Drive parcels separately.[1] The trial court granted summary judgment to the plaintiffs on these counterclaims, and this appeal followed.

1. *Counterclaims Relating to Sale of the Property.* Eichenblatt argues that the trial court erred in granting summary judgment on his breach of contract and fiduciary duty counterclaims involving the sale of the Piedmont/Maple property. We agree.

---

[1] Eichenblatt also alleged that the plaintiffs failed to collect rent on the commercial spaces at the property, and he sought attorney fees. The trial court denied summary judgment on these allegations, and the plaintiffs have not appealed that denial.

(a) Citing the judgment in the prior lawsuit, the trial court found that res judicata barred the sale-related counterclaims, entitling the plaintiffs to summary judgment. According to the trial court, Eichenblatt sought damages in both suits based on the value of the Piedmont/Maple property as an assemblage, rather than as separate parcels. It concluded that because Eichenblatt had already litigated this damage claim in the first suit, he could not raise it again as a counterclaim to the declaratory judgment action.

Res judicata, however, only applies where the cause of action in each suit is "identical." *Haley v. Regions Bank*, 277 Ga. 85, 91 (2) (586 SE2d 633) (2003). The term "cause of action" means "the entire set of facts which give rise to an enforceable claim." Id. (punctuation and emphasis omitted). Thus,

> [w]here some of the operative facts necessary to the causes of action are different in the two cases, the later suit is not upon the same cause as the former, although the subject matter may be the same, and even though the causes arose out of the same transaction.

Id. (citations and punctuation omitted). See also *Morrison v. Morrison*, 284 Ga. 112, 115 (3) (663 SE2d 714) (2008) ("The fact that the subject matter of different lawsuits may be linked factually does not mean that they are the same 'cause.'").

6

In the prior lawsuit, Eichenblatt alleged that KDP's mismanagement of Piedmont/Maple – including its failure to sell the property as an assemblage before the real estate market declined in 2008 – negatively impacted his share of the venture. Although that litigation ended with a judgment in favor of Eichenblatt for $625,000, his interest in Piedmont/Maple continued. In the present litigation, Eichenblatt claims that following the first trial, KDP and Kaufman once again mismanaged the venture, breached the amended operating agreement, violated their fiduciary duties, and diminished the value of his remaining interest by failing to sell the property for its highest value (which, in his view, was as a combined assemblage). Although the two suits involve the same real estate and both raise issues about property management and valuation, they are not identical for purposes of res judicata. On the contrary, the claims at issue here relate to mismanagement and devaluation of Eichenblatt's interest *after* the first trial.

"These claims could not have been raised in the prior lawsuit[] because the underlying circumstances had not yet occurred." *Humphrey*, 337 Ga. App. at 335 (2). The trial court, therefore, erred in granting summary judgment based on res judicata. Id.; see also *Glen Oak , Inc. v. Henderson*, 258 Ga. 455, 458 (2) (c) (369 SE2d 736) (1988) (prior action did not bar claim arising after trial in previous litigation).

(b) On appeal, the plaintiffs argue that even if the prior and current causes of action are not identical, the doctrine of collateral estoppel precludes the sale-related claims. Under this doctrine, "so long as [an] issue was determined in [a] previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim." *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 867 (2) (463 SE2d 5) (1995) (footnote omitted). Collateral estoppel bars an issue that was actually "litigated and decided in the previous action, or that necessarily had to be decided in order for the previous judgment to have been rendered." Id. (footnote omitted).

According to the plaintiffs, Eichenblatt's sale-related counterclaims rest on the same premise as his prior claims – that KDP "should have sold the *combined* parcels." (Emphasis in original). The plaintiffs' effort to boil Eichenblatt's allegations down to six words, however, cannot bring collateral estoppel into play. At issue here is whether sale of the Piedmont/Maple property breached the amended operating agreement or any fiduciary duty. This issue was not and could not have been litigated during the 2011 trial because the April 2013 and November 2013 sales – and the market conditions under which they occurred – had not yet taken place.

8

(c) Finally, the plaintiffs argue that they were entitled to judgment as a matter of law on Eichenblatt's sale-related counterclaims because "[t]he only evidence is that it did not make sense" to sell the parcels together in 2013. Eichenblatt offered expert testimony, however, that the appraised value of the combined property exceeded $18 million, well over the amount for which the parcels were sold separately, and that the property should have been marketed as an assemblage. Although the plaintiffs offered contrary evidence, material factual questions exist as to whether KDP and Kaufman mismanaged the sale to Eichenblatt's detriment.

2. *Counterclaims Relating to the 2012 Member Loan.* The trial court found that, as a matter of law, Eichenblatt could not establish that the circumstances surrounding the KDP member loan on the Maple Drive property breached the amended operating agreement or any fiduciary duty.[2] Again, we disagree.

---

[2] Before reaching this conclusion, the trial court found that at least some evidence raised a jury question as to the existence of a fiduciary relationship here. Although the plaintiffs assert on appeal that "KDP does not owe Eichenblatt a fiduciary duty," they offered no argument or citation of authority supporting this claim. And given the evidence, a jury could determine that KDP and Kaufman exercised a controlling influence over Eichenblatt's interest in Piedmont/Maple, placing them in a confidential relationship with Eichenblatt. See OCGA § 23-2-58; *Cushing v. Cohen*, 323 Ga. App. 497, 508 (5) (746 SE2d 898) (2013) (evidence presented factual questions regarding whether officer of real estate investment firm owed fiduciary duty to the firm's investors).

9

Without dispute, the amended operating agreement allowed KDP to loan money to Piedmont/Maple in 2012. According to Eichenblatt, however, the terms of the member loan violated Section 2.10 of that agreement, which provides:

> [Piedmont/Maple] is permitted in the normal course of its business to enter into transactions with any Member . . . provided that the price and other terms of such transactions . . . are fair to [Piedmont/Maple] and are not less favorable to [Piedmont/Maple] than those generally prevailing with respect to comparable transactions . . . between unrelated parties."

The trial court granted summary judgment because it found no evidence that the terms of the 2012 member loan transaction were unfair. But Eichenblatt testified, based on 30 years of experience in the commercial real estate business, that the promissory note issued by Piedmont/Maple to KDP was unfair, given the market conditions. And the evidence showed that the member loan carried significantly higher principal, interest rates, and fees (all of which inured to KDP's benefit) than the loan it replaced. Moreover, just one year earlier, KDP had obtained a commercial bank loan for the Piedmont Road property that carried a stated interest rate of 5.5 percent, approximately one third of the interest rate associated with the member loan.

On appeal, the plaintiffs cite us to expert evidence that the terms of the member loan and promissory note were reasonable and appropriate. Eichenblatt, however, has

10

pointed to at least *some* evidence from which a jury could conclude that the high interest rate and fees that directly benefitted KDP and cost Piedmont/Maple money were unreasonable. The trial court, therefore, erred in granting the plaintiffs summary judgment on the loan-related counterclaims. See *Dalton v. City of Marietta*, 280 Ga. App. 202, 203 (633 SE2d 552) (2006) ("Even slight evidence will be sufficient to satisfy the [claimants] burden of production of some evidence on a motion for summary judgment; such evidence may include favorable inferences drawn by the court from the evidence presented.") (citations and punctuation omitted).

3. *Admissibility of Expert Testimony.* In its summary judgment order, the trial court determined that because res judicata barred the sale-related counterclaims, the sales valuation testimony offered by Eichenblatt and his expert should be excluded as irrelevant. As discussed in Division 1, however, the trial court erred in granting summary judgment based on res judicata. Accordingly, the trial court improperly excluded the testimony as irrelevant.

Seeking to avoid the impact of this evidence, the plaintiffs ask us to affirm the evidentiary exclusion as "right for any reason," asserting that the expert testimony was "fundamentally flawed and riddled with critical errors." Although the plaintiffs moved to exclude the evidence on this basis, the trial court did not reach the

11

substance of the motion, and we will not resolve their evidentiary challenge for the first time on appeal. See *An v. Active Pest Control South*, 313 Ga. App. 110, 115-116 (720 SE2d 222) (2011). Instead, we have considered "whether the record as we now find it – including the opinions of the experts – is enough to get [Eichenblatt] past summary judgment." Id. at 116.

*Judgment reversed. Ellington, P. J., and Rickman, J., concur*.