**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 29, 2021**

# In the Court of Appeals of Georgia

A20A2052. EICHENBLATT v. PIEDMONT/MAPLE, LLC et al.

BROWN, Judge.

This is the fourth time these parties have come before this Court. See *Eichenblatt v. Piedmont/Maple, LLC*, 350 Ga. App. XXIV (June 24, 2019) (unpublished) (the "Third Appeal"); *Eichenblatt v. Piedmont/Maple, LLC*, 341 Ga. App. 761 (801 SE2d 616) (2017) (the "Second Appeal"); *Kaufman Dev. Partners, L. P. v. Eichenblatt*, 324 Ga. App. 71 (749 SE2d 374) (2013) (the "First Appeal"). In this appearance, David Eichenblatt appeals the trial court's grant of attorney fees in the amount of $837,444.95 to Piedmont/Maple, LLC, Kaufman Development Partners, LP ("KDP"), and Craig S. Kaufman (collectively "appellees"), under Georgia's "offer of settlement statute," OCGA § 9-11-68. We reverse.

A more detailed factual history of this case is found in the three prior opinions issued in this case, but following is a brief summary of the pertinent facts, most of which are culled from the opinion issued in the Third Appeal. In 1995, Eichenblatt and KDP, as its sole members, formed Piedmont/Maple, a real estate investment company that owned and operated a piece of commercial property in Atlanta. Pursuant to the operating agreement, Eichenblatt would receive up to 40 percent of Piedmont/Maple's quarterly cash flow distribution. In accordance with an amended operating agreement executed in 2000, Eichenblatt was removed as a member of Piedmont/Maple, but retained the right to receive his share of distributions. In 2005, Piedmont/Maple refinanced the debt on the commercial property, and then began experiencing financial difficulties. Eichenblatt, suspecting mismanagement by KDP, sued Kaufman, KDP, and other related entities claiming, inter alia, that the defendants had mismanaged Piedmont/Maple, breached the amended operating agreement, and ignored their fiduciary responsibilities. Following a jury trial in 2011, Eichenblatt was awarded $625,000 against KDP for breach of the operating agreement. KDP appealed, and this Court affirmed in the First Appeal.

In September 2012, KDP loaned Piedmont/Maple $3,550,000, allowing Piedmont/Maple to pay off debt on the commercial property which had gone into

default. At around the same time, the commercial property, which had been divided into two parcels, was sold in two separate transactions. Following the sale, appellees sought to wind down and terminate Piedmont/Maple. As part of the dissolution, Piedmont/Maple distributed to Eichenblatt $969,609.23, which it had determined to be 40 percent of its total remaining assets, less certain fees and expenses. When Eichenblatt disputed the accuracy of Piedmont/Maple's calculation and refused to cash the final distribution check, appellees filed the instant action for declaratory judgment to establish the proper dissolution payment. Eichenblatt counterclaimed for breach of contract and breach of fiduciary duty, asserting that KDP and Kaufman had manipulated the member loan to KDP's advantage and had reduced the value of the commercial property by selling the two parcels separately instead of as an assemblage. Eichenblatt also alleged that KDP and Kaufman leased space in the commercial property to an affiliate, but did not require the affiliate to make rental payments. Eichenblatt sought 40 percent of the unpaid rent, totaling approximately $422,451.

The Second Appeal arose from appellees' underlying declaratory judgment action. Appellees moved for summary judgment on Eichenblatt's counterclaims, and the trial court granted the motion in part. Eichenblatt appealed. Shortly before

3

Eichenblatt filed the Second Appeal with this Court, appellees served an offer of settlement pursuant to OCGA § 9-11-68 on him. Eichenblatt made a counteroffer, which appellees rejected; the parties never reached an agreement. In the meantime, this Court reversed the partial grant of summary judgment to appellees and remanded the case back to the trial court. See *Eichenblatt*, 341 Ga. App. at 765-767 (2), (3).

Following remand from this Court, and various procedural machinations, the matter proceeded to trial. At the start of trial, KDP confessed judgment in the amount of $79,000 on the unpaid rent claim. At the close of the evidence, the trial court granted a directed verdict against Eichenblatt on his claims of breach of contract/breach of fiduciary duty related to appellees' failure to sell the commercial property as an assemblage. As to the remaining claims, the jury found that Piedmont/Maple had proved that it correctly valued its assets and distributions to Eichenblatt regarding its attempted dissolution. The jury ruled against Eichenblatt on his counterclaims, finding that he failed to prove that Kaufman or KDP breached any contracts or their fiduciary duties.[1] The trial court entered a final judgment on May 18, 2018, concluding that appellees were entitled to a declaratory final judgment that

---

[1] The only counterclaim remaining after the directed verdict was whether Kaufman or KDP breached a fiduciary duty with respect to their management of Piedmont/Maple, particularly with regard to the member loan.

4

the correct amount of Eichenblatt's final share in the dissolution is $969,609.23 under the Operating Agreement of Piedmont/Maple, LLC, the First Amendment to Operating Agreement, and the Separation Agreement, and entering judgment against "[p]laintiff Craig S. Kaufman and in favor of . . . Eichenblatt in the amount of $79,065.60 [for the rent underpayment]."

In the Third Appeal, Eichenblatt challenged various evidentiary rulings by the trial court during the trial, and the trial court's directed verdict on his counterclaim. This Court affirmed the rulings. See Third Appeal, Slip Op. at 8-15. Upon remittitur, appellees moved for attorney fees pursuant to OCGA § 9-11-68. Following a hearing, the trial court granted the motion, awarding to appellees attorney fees in the amount of $837,444.95, pursuant to OCGA § 9-11-68. Eichenblatt appeals this order.

1. Proper resolution of this appeal requires us to consider the trial court's conclusion that "notwithstanding the discussions between the parties/their counsel at the time the Offer of Settlement was pending, *by its express terms, the Offer of Settlement was intended to settle only Eichenblatt's 'counterclaims.' See OCGA § 9-11-68 (a).*"[2] (Emphasis supplied.) Because we find that the trial court erred in

_____

[2] Appellees argue that Eichenblatt has waived our consideration of this claim of error because it "was not raised or ruled upon in the trial court[.]" "However, an appellate court cannot affirm a judgment based on an erroneous legal theory. Where

5

concluding that the offer was enforceable under OCGA § 9-11-68 (a), we reverse the award of attorney fees.

We apply "a de novo standard of review when an appeal presents a question of law regarding whether the trial court correctly interpreted and applied OCGA § 9-11-68 (a)." *Tiller v. RJJB Assoc., LLP*, 331 Ga. App. 622, 623 (770 SE2d 883) (2015). As such, "[w]e owe no deference to a trial court's ruling on questions of law and review such issues de novo under the 'plain legal error' standard of review." (Citations and punctuation omitted.) *Chadwick v. Brazell*, 331 Ga. App. 373, 375 (2)

---

it is apparent that the court rests its judgment on reasons which are erroneous or upon an erroneous legal theory, it commits reversible error." (Citations and punctuation omitted.) *Imerys Clays, Inc. v. Washington County Bd. of Tax Assessors*, 287 Ga. App. 674, 676 (652 SE2d 580) (2007). See also *Record Town, Inc. v. Sugarloaf Mills Ltd. Partnership of Ga.*, 301 Ga. App. 367 (1) (687 SE2d 640) (2009) (construction of lease, as with other contracts, "was ultimately a ruling on a matter of law"); *Suarez v. Halbert*, 246 Ga. App. 822, 824-825 (1) (543 SE2d 733) (2000) (reversing award of attorney fees to nonprevailing party where trial court's judgment rested on erroneous legal theory); *Glover v. Ware*, 236 Ga. App. 40, 44-45 (3) (510 SE2d 895) (1999) (after concluding that affidavit of illegality lacked merit as a matter of law, trial court committed plain legal error in denying requested damages). Cf. *In re Estate of McKitrick*, 326 Ga. App. 702, 704 (2) (a) (757 SE2d 295) (2014) (invoking de novo standard of review to address ruling by probate court even though parties did not challenge the ruling on appeal). We note additionally that Eichenblatt's second enumeration, claiming that the trial court erred in awarding attorney fees under OCGA § 9-11-68 because the offer of settlement did not meet the requirements of the statute and is unenforceable because it was impermissibly ambiguous, fairly encompasses the trial court's ruling as quoted supra.

(771 SE2d 75) (2015). Moreover, "where it is apparent that a trial court's judgment rests on an erroneous legal theory, an appellate court cannot affirm." (Citation and punctuation omitted.) *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000). See also *Imerys Clays, Inc. v. Washington County Bd. of Tax Assessors*, 287 Ga. App. 674, 676 (652 SE2d 580) (2007).

OCGA § 9-11-68 "is in derogation of common law and it must be strictly construed against the award of [attorney fees and costs]." (Citations and punctuation omitted.) *Alessi v. Cornerstone Assoc.*, 334 Ga. App. 490, 493 (780 SE2d 15) (2015). OCGA § 9-11-68 therefore "must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute." (Citation, punctuation, and emphasis omitted.) *Harris v. Mahone*, 340 Ga. App. 415, 422 (1) (797 SE2d 688) (2017).

The offer of settlement provided, in pertinent part, as follows:

Pursuant to O.C.G.A. § 9-11-68, Counterclaim-Defendants Piedmont/Maple L.L.C. ("Piedmont/Maple"), Kaufman Development Partners, LP ("KDP"), and Craig S. Kaufman (collectively, the "KDP Parties") *hereby offer to settle the counterclaim for breach of fiduciary duty asserted by Counterclaim-Plaintiff David L. Eichenblatt* against the KDP Parties in the above-captioned lawsuit according to the terms and conditions set forth below. . . .

1. The KDP Parties shall pay to Mr. Eichenblatt the aggregate sum of One Hundred Twenty-Five Thousand and No/100 Dollars ($125,000.00) (the "Settlement Payment"), in exchange for Mr. Eichenblatt dismissing, with prejudice, all counterclaims asserted by Mr. Eichenblatt against the KDP Parties in the above-referenced lawsuit. No amount of this offer (Zero Dollars [$0]) is proposed to settle any claim and/or counterclaim for punitive damages. To the extent that Mr. Eichenblatt seeks to recover attorney[] fees and other expenses, the Settlement Payment includes any and all such attorney[] fees and other expenses. *The Settlement Payment shall settle and terminate any and all counterclaims asserted by Mr. Eichenblatt in the above-referenced lawsuit.*

2. Mr. Eichenblatt shall dismiss with prejudice all counterclaims asserted by Mr. Eichenblatt against the KDP Parties in the above-referenced lawsuit within ten (10) days after the receipt by Mr. Eichenblatt (or counsel for Mr. Eichenblatt) of the Settlement Payment, and the parties shall file a Consent Order of Dismissal of Counterclaims With Prejudice in the form attached hereto as *Exhibit A*. Mr. Eichenblatt also shall dismiss with prejudice any pending appeals of any issues in this lawsuit.

3. Mr. Eichenblatt shall agree to and execute a full and final release of any and all claims and/or counterclaims, whether known or unknown, that Mr. Eichenblatt (and any assigns, heirs, or successors in interest) may have or may have had at any time in the past against the KDP Parties and their current and former parents, subsidiaries, affiliates,

8

successors, assigns, heirs, directors, officers, shareholders, members, employees, agents, attorneys, representatives, consultants, investigators, and others acting on their behalf. . . .

(Emphasis supplied.) Georgia's "offer of settlement statute" provides, in relevant part, as follows:

(a) At any time more than 30 days after the service of a summons and complaint on a party but not less than 30 days (or 20 days if it is a counteroffer) before trial, either party may serve upon the other party, but shall not file with the court, a written offer, denominated as an offer under this Code section, *to settle a tort claim* for the money specified in the offer and to enter into an agreement dismissing the claim or to allow judgment to be entered accordingly. Any offer under this Code section must:

(1) Be in writing and state that it is being made pursuant to this Code section;

. . .

(3) Identify generally the claim or claims the proposal is attempting to resolve;

(4) State with particularity any relevant conditions; [and]

(5) State the total amount of the proposal[.]

(Emphasis supplied.) OCGA § 9-11-68 (a).

9

Pursuant to this Court's decision in *CaseMetrix, LLC v. Sherpa Web Studios*, 353 Ga. App. 768, 770-773 (1) (839 SE2d 256) (2020), appellees' offer was unenforceable under OCGA § 9-11-68 (a). As this Court stated in *CaseMetrix*,

> the law applies to resolution of *tort claims only*. Additionally, to be enforceable, the offer cannot be unclear or ambiguous as to the scope of claims to be resolved if the offer is accepted. This means that the offer must sufficiently identify the claim or group or category of claims that the proposal covers. The offer must also sufficiently identify the relevant conditions of the settlement because the scope of claims required to be relinquished by the offer is material.

(Citation and punctuation omitted; emphasis supplied.) 353 Ga. App. at 772 (1). As in *CaseMetrix*, in this case, the offer "was internally inconsistent as to the scope of the claims it sought to resolve" and, therefore, ambiguous. Id. at 773 (1). The opening paragraph of the offer here sought to settle "*the counterclaim for breach of fiduciary duty* asserted by Counterclaim-Plaintiff David L. Eichenblatt." (Emphasis supplied.) Paragraph 1 of the offer, however, sought to "settle and terminate *any and all counterclaims* asserted by Mr. Eichenblatt in the above-referenced lawsuit." (Emphasis supplied.) And, as set out above, Eichenblatt asserted counterclaims for breach of fiduciary duty (a tort) and breach of contract. Because a "plausible reading of the offer [here] is that it required settlement of both [the] tort claim and [the]

10

contract claim," *CaseMetrix*, 353 Ga. App. at 772-773 (1), the trial court erred in ruling that the offer was enforceable under OCGA § 9-11-68 (a). Accordingly, we reverse its award of attorney fees to appellees. See *CaseMetrix*, 353 Ga. App. at 773 (1). In so holding, we acknowledge that in *Hillman v. Bord*, 347 Ga. App. 651 (820 SE2d 482) (2018) (physical precedent only), this Court found that the appellees' offers to settle both tort and non-tort claims (request for injunctive relief) were valid because the appellants' claim for injunctive relief was "entirely premised on the allegations contained in their tort claims against the [a]ppellees." Id. at 655 (1). *Hillman* did not consider whether the offer was unclear or ambiguous. See *CaseMetrix*, 353 Ga. App. at 773 (1), n.3. In this case, the breach of contract claims were not and could not be entirely premised on the allegations contained in the tort claims. See, e.g., *A. L. Williams & Assocs. v. Faircloth*, 259 Ga. 767, 769 (3) (d) (386 SE2d 151) (1989) ("[a]ny breach of contract must arise from the contract, and does not give rise to an action for tort, whether or not such breach was negligent or wilful") (punctuation omitted).

2. In light of our disposition in Division 1, we need not address Eichenblatt's remaining enumerations of error.

*Judgment reversed. Dillard, P. J., and Rickman, P. J., concur.*

11